[No. S105734. Jan. 29, 2004.]

THE PEOPLE, Plaintiff and Respondent, v.
ANTONIO J. BARRAGAN, Defendant and Appellant.

Counsel

John L. Staley, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Robert M. Foster, Steven T. Oetting and Garrett Beamuont, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**CHIN, J.**—The so-called Three Strikes law prescribes increased punishment for a person who is convicted of a felony after sustaining one or more qualifying prior felony convictions or juvenile adjudications, which are commonly known as strikes. (Pen. Code, §§ 667, subds. (b)–(i), 1170.12.) The issue here is whether retrial of a strike allegation is permissible where a trier of fact finds the allegation to be true, but an appellate court reverses that finding for insufficient evidence. Defendant Antonio J. Barragan argues that retrial is barred by the constitutional requirement of fundamental fairness, equitable principles of res judicata and law of the case, and relevant statutory provisions. We conclude that retrial is permissible. We reverse the Court of Appeal's judgment insofar as it bars retrial of a strike allegation.

FACTS

An information charged defendant with several crimes, including being a felon in possession of a firearm, and alleged that he had one prior strike: a juvenile adjudication on June 8, 1995, for assault with a deadly weapon and with personal infliction of great bodily injury. To prove the alleged prior juvenile adjudication, the prosecution introduced into evidence copies of the juvenile court petition alleging the assault, and a minute order showing the juvenile court's finding that defendant committed the assault. While testifying at trial, defendant admitted that he had sustained a "true finding" in juvenile court in 1995 for striking someone with a baseball bat. During closing argument, defendant's counsel stated: "[Defendant] has been very candid . . . about [his] priors. You've heard about them. There's not an issue. . . . [Defendant] has been very candid . . . about his testimony and his prior convictions as an adult and the true finding as a juvenile." The trial court instructed the jury that if it found defendant guilty, then it had to "determine whether the allegation of the prior 'serious felony' conviction is true." The court also instructed the jury that "as a matter of law," assault with a deadly weapon and with infliction of great bodily injury "is a 'serious felony'

offense" under the Three Strikes law, and that "a 'conviction' occurs by a 'true finding' in Juvenile Court after trial, or upon an admission by the accused without trial." The jury found defendant guilty of being a felon in possession of a firearm, found him not guilty of the remaining charges, and found true "the allegation that [he] . . . suffered a true finding of a serious felony offense in Juvenile Court, within the meaning of [the Three Strikes law], to wit: on or about June 8, 1995, . . . defendant was convicted of Assault with a Deadly Weapon With Personal Infliction of Great Bodily Injury . . . ." The trial court imposed a four-year prison term, which it calculated by taking the two-year middle term ordinarily applicable to a "felon in possession" conviction and doubling it under the Three Strikes law for defendant's prior strike.

The Court of Appeal affirmed defendant's conviction, but found insufficient evidence to support the jury's true finding on the strike allegation. Regarding the latter issue, the court first reasoned that in order to prove the strike allegation, the prosecution had to prove that defendant's prior juvenile court adjudication "resulted in a declaration of wardship." The court then found that the prosecution failed to meet this burden, explaining: "The prosecution did no more than prove that true findings were made on the petition and the matter was set for a dispositional hearing. While it is possible to speculate that the true finding on the petition resulted in a declaration of wardship, we conclude on this record it is not possible to so infer. The evidence supporting the finding of a strike based on [defendant's] prior juvenile adjudication was insufficient." Turning to remedy, the court noted a split of authority regarding whether retrial of a strike allegation is permissible after a reversal for insufficient evidence. "[S]tand[ing] by" its prior decision in *People v. Mitchell* (2000) 81 Cal.App.4th 132 [96 Cal.Rptr.2d 401] (*Mitchell*), the court held that retrial is impermissible.

Defendant filed a petition for review, challenging the affirmance of his conviction. The People also filed a petition for review, challenging only the Court of Appeal's conclusion that retrial of the strike allegation is impermissible. We granted the People's petition and denied defendant's.[1]

## DISCUSSION

As the Court of Appeal noted, California appellate courts have disagreed on whether retrial of a strike allegation is proper after an appellate court reverses a true finding for insufficient evidence. *Mitchell*, which was decided by the same appellate court that decided the case now before us, held that

---

[1] In neither their petition nor their briefs have the People challenged the Court of Appeal's conclusion that the evidence at trial was insufficient to establish a strike based on defendant's alleged prior juvenile adjudication. We express no opinion on that question.

retrial is impermissible "where the government has had a full and fair opportunity to present its case unhampered by evidentiary error or other impediment . . . ." (*Mitchell, supra,* 81 Cal.App.4th at p. 136.) Courts of Appeal that have subsequently considered the issue have consistently rejected *Mitchell* and held that retrial of an alleged prior conviction is both permissible and proper. (E.g., *People v. Sotello* (2002) 94 Cal.App.4th 1349 [115 Cal.Rptr.2d 118]; *People v. Franz* (2001) 88 Cal.App.4th 1426 [106 Cal.Rptr.2d 773]; *Cherry v. Superior Court* (2001) 86 Cal.App.4th 1296 [104 Cal.Rptr.2d 131]; *People v. Scott* (2000) 85 Cal.App.4th 905 [102 Cal.Rptr.2d 622].)

■ In resolving this conflict, we begin with a related principle that the United States Supreme Court has recently established: in the noncapital sentencing context, retrial of a prior conviction allegation does not violate the double jeopardy clause of the federal Constitution. (*Monge v. California* (1998) 524 U.S. 721, 734 [141 L.Ed.2d 615, 118 S.Ct. 2246] (*Monge II*).) In reaching this conclusion, the high court acknowledged that a finding on appeal that the evidence at trial was insufficient to sustain a "conviction" on a substantive offense "is comparable to an acquittal, and the Double Jeopardy Clause precludes a second trial. [Citation.]" (*Id.* at p. 729.) However, the court explained, "[w]here a similar failure of proof occurs in a sentencing proceeding, . . . the analogy is inapt." (*Ibid.*) "[T]he determinations at issue [in noncapital sentencing proceedings] do not place a defendant in jeopardy for an 'offense,' [citation]." (*Id.* at p. 728.) "An enhanced sentence imposed on a persistent offender" does not constitute " 'either a new jeopardy or additional penalty for the earlier crimes' but [is simply] 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.' [Citations.]" (*Ibid.*) "The pronouncement of sentence simply does not 'have the qualities of constitutional finality that attend an acquittal.' [Citations.]" (*Id.* at p. 729.) Thus, a "[s]entencing decision[] favorable to the defendant . . . cannot generally be analogized to an acquittal." (*Ibid.*) This rule applies even in states that, as "a matter of legislative grace," have enacted "procedural safeguards to protect defendants who may face dramatic increases in their sentences as a result of recidivism enhancements." (*Id.* at p. 734.)

The high court's decision in *Monge II* reviewed and affirmed our decision in *People v. Monge* (1997) 16 Cal.4th 826 [66 Cal.Rptr.2d 853, 941 P.2d 1121] (*Monge I*), which held that retrial of a prior conviction allegation does not violate the double jeopardy protections of either the federal Constitution or the California Constitution. Like the high court, the lead opinion in *Monge I* rejected the analogy between a "failure of proof" on a prior conviction allegation and "an acquittal at the guilt phase of a criminal trial." (*Id.* at p. 837 (lead opn. of Chin, J.).) The lead opinion reasoned that a trial of such an allegation "is simple and straightforward as compared to the guilt phase of

a criminal trial," and "[o]ften . . . involves only the presentation of a certified copy of the prior conviction along with the defendant's photograph and fingerprints. In many cases, defendants offer no evidence at all, and the outcome is relatively predictable." (*Id.* at p. 838.) Moreover, such a trial "is merely a determination, for purposes of punishment, of the defendant's *status*, which, like age or gender, is readily determinable from the public record." (*Ibid.*) "Like a trial in which the defendant's age or gender is at issue, the prior conviction trial merely determines a question of the defendant's continuing status, irrespective of the present offense, and the prosecution may reallege and retry that status in as many successive cases as it is relevant [citations], even if a prior jury has rejected the allegation [citation]. If a jury rejects the allegation, it has not acquitted the defendant of his prior conviction status. [Citation.] 'A defendant cannot be "acquitted" of that status any more than he can be "acquitted" of being a certain age or sex or any other inherent fact.' [Citation.]" (*Id.* at p. 839.)

Foreshadowing defendant's contentions here, the lead opinion in *Monge I* noted that the inapplicability of double jeopardy protections "raises numerous secondary issues. For example, [a] Court of Appeal's determination that the evidence [at trial] was insufficient to prove [a] defendant's prior conviction was of a serious felony is, at the very least, the law of th[e] case. Thus, the prosecution would have to present additional evidence at a retrial of the prior conviction allegation in order to obtain a different result. What limitations might apply to this additional evidence . . . we do not decide, because the Court of Appeal did not address that issue. For the same reason, we express no opinion about whether [Penal Code] section 1025[2] (or some other applicable provision) might in some cases bar retrial of the prior conviction allegation as a statutory matter irrespective of constitutional constraints. Finally, we express no opinion about whether due process protections preclude the prosecution from retrying the prior conviction allegation." (*Monge I, supra*, 16 Cal.4th at p. 845 (lead opn. of Chin, J.).)

Before addressing defendant's contentions, we also note that 50 years ago, in *People v. Morton* (1953) 41 Cal.2d 536, 541 [261 P.2d 523] (*Morton*), we considered "the order that should . . . be made" by an appellate court if it concludes that the evidence at trial was insufficient to support a finding that a defendant sustained an alleged prior conviction. In *Morton*, the trial court had found that the defendant was "an habitual criminal" under former section 644 based on two prior convictions for felonies listed in that section. (*Morton, supra*, 41 Cal.2d at p. 538.) On review, we found insufficient evidence to support the finding because, as to one of the prior convictions, the evidence at trial failed to show the nature of the offense and, thus, that it was one of the listed offenses. (*Id.* at pp. 540–541.) We next explained that, in similar

---

2 Unless otherwise indicated, all further statutory references are to the Penal Code.

circumstances, "conflicting" precedents offered the following remedial options: (1) "revers[ing] the entire judgment and remand[ing] the cause for a new trial on all issues, including the charge of the primary offenses"; (2) "set[ting] aside the finding that the defendant suffered the challenged prior conviction" and either "modif[ying]" the judgment "by vacating" the habitual-criminal finding or "remand[ing] for resentencing on the basis of the primary offenses . . . and any unchallenged prior convictions"; and (3) "set[ting] aside the finding that the defendant suffered the challenged prior conviction" and "remand[ing] . . . for a new trial on the issue of the challenged prior conviction." (*Id.* at pp. 541–542.) We held that where "the defects in the proof of the prior convictions [are] capable of correction on a retrial," the "proper" procedure is the last option, i.e., setting the finding aside and remanding for a new trial only on the challenged prior conviction. (*Id.* at p. 544.) "This procedure," we explained, "carries out the policy of the statutes imposing 'more severe punishment, proportionate to their persistence in crime, of those who have proved immune to lesser punishment' [citation], and prevents defendants from escaping the penalties imposed by those statutes through technical defects in . . . proof. It affords the defendant a fair hearing on the charge, and if it cannot be proved he will not have to suffer the more severe punishment." (*Id.* at pp. 544–545.)

Although cognizant of *Morton*'s holding, we agree with defendant that *Morton* is not dispositive. Defendant correctly notes that *Morton* "did not address whether retrial of the prior conviction was barred by the doctrines of collateral estoppel, res judicata, law of the case, or fundamental fairness." Nor did any of the cases *Morton* discussed. "[C]ases are not authority for propositions not considered. [Citations.]" (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].) With this background in mind, we now turn to defendant's specific contentions.

## I. FUNDAMENTAL FAIRNESS

Defendant argues that "[t]he doctrine of fundamental fairness, as incorporated in the due process clause of the federal and state Constitutions, suggests that it is unfair to give the prosecution a second opportunity to prove an allegation [where] it failed to carry its burden of proof during the first trial." He asserts that a state may not regulate its own judicial procedures in a manner that " 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' [Citations.]" He also asserts that "[t]he due process clause may be invoked 'to insure that [a] state created right is not arbitrarily abrogated.' [Citation.]" According to defendant, California accords him a "statutory right to a trial on the truth of" his alleged prior conviction, and allowing a "retrial of the truth of that allegation after an appellate court reversal for insufficient evidence would

abrogate [his] right to be discharged from the penalties associated with a not true finding to that allegation."

In considering defendant's due process argument, we find instructive the high court's rejection of a similar argument in *Dowling v. United States* (1990) 493 U.S. 342 [107 L.Ed.2d 708, 110 S.Ct. 668] (*Dowling*). There, the defendant argued that both the double jeopardy and due process clauses of the United States Constitution barred the prosecution from introducing at his criminal trial evidence of his alleged commission of another crime of which he had previously been acquitted. (*Id.* at pp. 343–344.) The high court first held that the double jeopardy clause did not bar admission of the evidence, because "the prior acquittal did not determine an ultimate issue in the [subsequent] case" and the evidence's admissibility in the subsequent prosecution was "governed by a lower standard of proof" than the standard that governed during the prior proceeding. (*Id.* at p. 349.) The court next held that admission of the evidence did not "fail[] the due process test of 'fundamental fairness' " or "violate[] 'fundamental conceptions of justice.' [Citation.]" (*Id.* at p. 352.) Regarding this issue, the defendant argued in part that admission of the evidence "contravene[d] a tradition that the government may not force a person acquitted in one trial to defend against the same accusation in a subsequent proceeding." (*Id.* at p. 354.) The court replied: "We acknowledge the tradition, but find it amply protected by the Double Jeopardy Clause. We decline to use the Due Process Clause as a device for extending the double jeopardy protection to cases where it otherwise would not extend." (*Ibid.*)

We reject defendant's due process argument because it essentially asks us to do what the high court in *Dowling* said we could not do: "use the Due Process Clause as a device for extending the double jeopardy protection to cases where it otherwise would not extend." (*Dowling, supra,* 493 U.S. at p. 354.) Defendant, who cannot, after *Monge I* and *Monge II,* invoke the protection of the double jeopardy clause to bar retrial, invites us to achieve the same end via the due process clause. We decline his invitation because, as the high court told us in *Dowling*: "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. . . . 'Judges are not free, in defining "due process," to impose on law enforcement officials [their] "personal and private notions" of fairness and to "disregard the limits that bind judges in their judicial function." [Citation.]' " (*Id.* at pp. 352–353.)

Our rejection of defendant's due process argument is also consistent with the high court's decision in *Caspari v. Bohlen* (1994) 510 U.S. 383 [127 L.Ed.2d 236, 114 S.Ct. 948] (*Caspari*). There, a lower court granted a habeas corpus petition after ruling that where trial-like procedures apply in determining persistent offender status, the federal double jeopardy clause prohibits

retrial after an appellate court reverses such a determination for insufficient evidence. (*Id.* at pp. 386–388.) The high court held that the habeas corpus petition should not have been granted, because the lower court's conclusion constituted "a new rule" (*id.* at p. 395) and a court generally may not grant habeas corpus relief "based on a rule announced after [the defendant's] conviction and sentence became final. [Citation.]"[3] (*Caspari, supra,* at p. 389.) In reaching this conclusion, the high court rejected the argument that the defendant was entitled to relief because the new rule constituted a " ' "watershed rule[] of criminal procedure" *implicating the fundamental fairness* and accuracy of the criminal proceeding.' [Citation.]" (*Id.* at p. 396, italics added.) The high court found that "[a]pplying the Double Jeopardy Clause to successive noncapital sentencing is not such a groundbreaking occurrence. Persistent-offender status is a fact objectively ascertainable on the basis of readily available evidence. Either a defendant has the requisite number of prior convictions, or he does not. *Subjecting him to a second proceeding at which the State has the opportunity to show those convictions is not unfair* and will enhance the accuracy of the proceeding by ensuring that the determination is made on the basis of competent evidence." (*Ibid.,* italics added.) *Caspari* lends additional support to our conclusion that permitting retrial under the circumstances now before us does not violate defendant's due process right to fundamental fairness.

The high court's discussion in *Caspari* mirrors our earlier discussion in *Morton.* As previously noted, there, in holding that retrial is "proper" where "the defects in the proof of the prior convictions [are] capable of correction on a retrial," we explained: "This procedure . . . carries out the policy of the statutes imposing 'more severe punishment, proportionate to their persistence in crime, of those who have proved immune to lesser punishment' [citation], and prevents defendants from escaping the penalties imposed by those statutes through technical defects in . . . proof. It affords the defendant a fair hearing on the charge, and if it cannot be proved he will not have to suffer the more severe punishment." (*Morton, supra,* 41 Cal.2d at pp. 544–545.) In light of *Dowling, Caspari,* and *Morton,* we reject defendant's due process argument.

## II. THE LAW OF THE CASE

As previously noted, in *Monge I,* after concluding that double jeopardy protections did not bar retrial of a prior conviction allegation, the lead opinion noted: "Of course, this conclusion raises numerous secondary issues. For example, the Court of Appeal's determination that the evidence [at trial]

---

[3] Given its conclusion, the high court did not consider the merits of the lower court's rule. (*Caspari, supra,* 510 U.S. at p. 397.) As previously explained, the high court later announced a contrary rule in *Monge II, supra,* 524 U.S. at page 734.

was insufficient to prove [the] defendant's prior conviction was of a serious felony is, at the very least, the law of this case. Thus, the prosecution would have to present additional evidence at a retrial of the prior conviction allegation in order to obtain a different result." (*Monge I, supra,* 16 Cal. 4th at p. 845 (lead opn. of Chin, J.).) Defendant argues that "retrial should be barred under the doctrine of the law of the case unless the prosecution can establish that it has discovered new evidence which could not have been presented at the first trial through the exercise of due diligence." We disagree.

Under the law of the case doctrine, when an appellate court " 'states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal . . . .' " (*Kowis v. Howard* (1992) 3 Cal.4th 888, 893 [12 Cal.Rptr.2d 728, 838 P.2d 250].) Absent an applicable exception, the doctrine "requir[es] both trial and appellate courts to follow the rules laid down upon a former appeal whether such rules are right or wrong." (*Estate of Baird* (1924) 193 Cal. 225, 234 [223 P. 974].) As its name suggests, the doctrine applies only to an appellate court's decision on a question of law; it does not apply to questions of fact. (*Id.* at pp. 234–239.) Nevertheless, it is potentially relevant here because an appellate court's determination "that the evidence is insufficient to justify a finding or a judgment is necessarily a decision upon a question of law." (*Id.* at p. 238.) Such a determination "establishe[s] as the law of the case that all the evidence adduced at the previous trial was insufficient as a matter of law to establish" the finding or judgment. (*Id.* at p. 234; see also *People v. Shuey* (1975) 13 Cal.3d 835, 842 [120 Cal.Rptr. 83, 533 P.2d 211] [doctrine applies to finding of evidence's "legal sufficiency"].)

As here relevant, the law of the case doctrine is subject to an important limitation: it "applie[s] only to *the principles of law* laid down by the court as applicable to a retrial of fact," and "does not embrace the facts themselves . . . ." (*Moore v. Trott* (1912) 162 Cal. 268, 273 [122 P. 462], italics added.) In other words, although an appellate court's legal determination constitutes the law of the case, "upon a retrial . . . that law must be applied by the trial court to the evidence presented upon the second trial." (*Erlin v. National Union Fire Ins. Co.* (1936) 7 Cal.2d 547, 549 [61 P.2d 756] (*Erlin*).) Thus, during subsequent proceedings in the same case, an appellate court's binding legal determination "controls the outcome only if the evidence on retrial or rehearing of an issue is substantially the same as that upon which the appellate ruling was based. [Citations.]" (*People v. Mattson* (1990) 50 Cal.3d 826, 850 [268 Cal.Rptr. 802, 789 P.2d 983] (*Mattson*).) Where, on remand, "there is a substantial difference in the evidence to which the [announced] principle of law is applied, . . . the [doctrine] may not be invoked." (*Hoffman v. Southern Pac. Co.* (1932) 215 Cal. 454, 457 [11 P.2d 387].) Even where the appellate court reverses based on "the 'sufficiency of the evidence',

the rule of the law of the case may not be extended to be an estoppel when new material facts, or evidence, or explanation of previous evidence appears in the subsequent trial. [Citations.]" (*Weaver v. Shell Company* (1939) 34 Cal.App.2d 713, 717 [94 P.2d 364].) These well-established principles explain the lead opinion's statement in *Monge I* that, under the law of the case doctrine, "the prosecution would have to present additional evidence at a retrial of the prior conviction allegation in order to" overcome the appellate court's determination that the evidence at the first trial was legally insufficient to prove the allegation. (*Monge I, supra*, 16 Cal.4th at p. 845 (lead opn. of Chin, J.).)

Our decisions make clear that, contrary to defendant's assertion, nothing in the law of the case doctrine itself limits the additional evidence that a party may introduce on retrial to that which "could not have been presented at the first trial through the exercise of due diligence." Perhaps the most relevant case in this regard is *Mattson*. During a prior appeal in that matter, we reversed the defendant's convictions after concluding from "the record of the first trial" that police had illegally obtained his confessions and that the trial court had erred in denying his suppression motion. (*Mattson, supra*, 50 Cal.3d at p. 848.) During retrial, which again resulted in conviction, the trial court allowed the prosecution "to relitigate the admissibility of the confessions" and to "introduce[] evidence" on the issue that "had not been presented at the first trial . . . ." (*Id.* at p. 849.) On review after retrial, we affirmed the trial court's ruling and rejected the defendant's claim that various principles, including the law of the case, "preclude[d] relitigation" of the issue "based on facts that [were] inconsistent and irreconcilable with facts established in the initial [suppression] hearing." (*Ibid.*)

In affirming the trial court's ruling in *Mattson*, we first found the defendant's attempt to limit the evidence on retrial to be contrary to statute. We explained: "A reversal of a judgment without directions is an order for a new trial. (§ 1262.) 'An unqualified reversal remands the cause for new trial and places the parties in the trial court in the same position as if the cause had never been tried.' [Citation.] 'The granting of a new trial places the parties in the same position as if no trial had been had. . . .' (§ 1180.) [¶] That status even permits amendment of the accusatory pleading [citation], as well as renewal and reconsideration of pretrial motions and objections to the admission of evidence. [Citation.] Absent a statutory provision precluding relitigation, a stipulation by the parties, or an order by the court that prior rulings made in the prior trial will be binding at the new trial, objections must be made to the admission of evidence (Evid. Code, § 353), and the court must consider the admissibility of that evidence at the time it is offered. [Citations.]" (*Mattson, supra*, 50 Cal.3d at pp. 849–850, fn. omitted.)

■ In *Mattson*, we next rejected the defendant's reliance on the law of the case doctrine, explaining: "The law-of-the-case doctrine binds the trial court as to the law but controls the outcome *only if the evidence on retrial or rehearing of an issue is substantially the same as that upon which the appellate ruling was based.* [Citations.] The law-of-the-case doctrine applied to this court's prior ruling only insofar as we held that California law governed the admissibility of the confessions. The trial court did not depart from that ruling in its determination, *based on new evidence*, that the confessions were admissible." (*Mattson, supra,* 50 Cal.3d at p. 850, italics added.) "Since there was no [statutory or constitutional] bar to a new hearing on the admissibility of the confessions, *and additional evidence on the question of who initiated the interviews was heard,* the law-of-the-case doctrine did not compel the trial court to exclude [the] defendant's confessions. Except where insufficiency of the evidence to sustain *a judgment of conviction* was the basis for reversal, in which case *double jeopardy considerations* preclude relitigation [citations], the law-of-the-case doctrine *is inapplicable* to the determination of questions of fact [citation] decided on the basis of *new or different evidence in a new trial following reversal on appeal.* [Citation.]" (*Id.* at pp. 852–853, fn. omitted, italics added.) Notably, in rejecting the defendant's claim, we did not condition the prosecution's right to introduce "new or different evidence" at retrial (*id.* at p. 853) on a showing that the evidence could not have been presented at the first trial through the exercise of due diligence. Thus, *Mattson* establishes that nothing in the law of the case doctrine itself imposes this limitation on the introduction of new evidence; any such limitation must come from some other statutory, constitutional, or equitable source.

In this regard, *Mattson* is consistent with a long line of California decisions. For example, in *Chandler v. People's Sav. Bank* (1884) 65 Cal. 498, 499–500 [4 P. 502], we held that after an appellate reversal of a judgment for the plaintiff for insufficient evidence and a remand for further proceedings according to the views stated in the appellate opinion, the plaintiff "was at liberty in a new trial" (*id.* at p. 499) to introduce additional evidence on the unproven issue, and the trial court had erred in precluding introduction of additional evidence at trial. In *Mitchell v. Davis* (1863) 23 Cal. 381, 383–384, we held that an appellate court's finding of insufficient evidence is law of the case but "does not operate as a bar or estoppel upon the plaintiff from showing the true facts of the case," and that after a remand for a new trial, "the plaintiff had a clear right to introduce any evidence relevant to the issues to be tried." Finally, in *Weightman v. Hadley* (1956) 138 Cal.App.2d 831 [292 P.2d 909], the court held that at a retrial after an unqualified appellate reversal for insufficient evidence, the plaintiff had "the right to introduce . . . any additional and new evidence" (*id.* at p. 840) on issues as to which proof at the first trial was insufficient, and that because the law of the case doctrine "does not apply to new and additional evidence,"

"there can be no application of the doctrine until the facts have been elicited on a retrial." (*Id.* at p. 841.) Like *Mattson*, these decisions demonstrate that nothing in the law of the case doctrine itself limits a party's ability to introduce additional evidence at retrial after a reversal for insufficient evidence. (See also *Erlin, supra*, 7 Cal.2d at p. 549 [after "unqualified" appellate reversal of judgment for plaintiff for insufficient evidence, law of the case established by the appellate court must "be applied . . . to the evidence presented upon the second trial," and plaintiff is "entitled" at a second trial "to . . . the opportunity to present evidence in support of" his allegations].)

In arguing for a "due diligence" standard, defendant relies on statutes governing motions for new trial, for reconsideration, and for relief from default. He notes that under section 1181, subdivision 8, a criminal defendant cannot obtain a new trial based on "new evidence" without showing that "he could not, with reasonable diligence, have discovered and produced" the evidence "at trial." He notes that a civil litigant relying on new evidence must make a similar showing to obtain either a new trial under Code of Civil Procedure section 657, subdivision 4, or reconsideration under Code of Civil Procedure section 1008, as the latter provision has been judicially construed. (See *Blue Mountain Development Co. v. Carville* (1982) 132 Cal.App.3d 1005, 1013 [183 Cal.Rptr. 594].) He also asserts that "ignorance of the law" does not establish "mistake, inadvertence, surprise, or excusable neglect" for purposes of obtaining relief from judgment under Code of Civil Procedure section 473. He argues that we should extend the rule of these statutes to the factual context now before us, and hold that retrial after an appellate reversal for insufficient evidence is "barred under the doctrine of the law of the case unless the prosecution can establish that it has discovered new evidence which could not have been presented at the first trial through the exercise of due diligence."

We reject defendant's argument as being inconsistent with the separate scheme that has long governed retrials after appellate reversals for insufficient evidence.[4] As previously noted, section 1262 provides that a reversal of a judgment against the defendant "shall be deemed an order for a new trial, unless the appellate court shall otherwise direct." As we explained over 80 years ago, an appellate court's power to direct otherwise—i.e., to direct a trial court to enter judgment on an issue in the appellant's favor—"should be exercised only when, upon a full consideration of the record, the party against whom the judgment is [to be] entered in the trial court could not successfully meet the contentions of his adversary upon a retrial or reconsideration of the

---

[4] We also note that a criminal defendant's ability to obtain a new trial based on new evidence is not as limited as defendant suggests. (See *People v. Hayes* (1990) 52 Cal.3d 577, 614–615 [276 Cal.Rptr. 874, 802 P.2d 376]; *People v. Martinez* (1984) 36 Cal.3d 816, 825–826 [205 Cal.Rptr. 852, 685 P.2d 1203].)

case in the trial court." (*Tupman v. Haberkern* (1929) 208 Cal. 256, 269 [280 P. 970].) Before an appellate court may exercise this power, " 'it must appear from the record . . . that on no theory grounded in reason and justice could the party defeated on appeal make a further substantial showing in the trial court in support of his cause.' [Citations.]" (*Boyle v. Hawkins* (1969) 71 Cal.2d 229, 232, fn. 3 [78 Cal.Rptr. 161, 455 P.2d 97] (*Boyle*).) Thus, where an appellate court finds that "the evidence is insufficient to support the verdict," the "normal rule" is that the losing party on appeal is "entitled to a retrial." (*Id.* at pp. 232–233, fn. 3.) Under section 1180, "[t]he granting of a new trial places the parties in the same position as if no trial had been had" and "[a]ll the testimony must be produced anew."

These well-established principles were at work in *Mattson*. As previously discussed, we held in *Mattson* that, after our reversal for insufficient evidence at trial to establish the admissibility of the defendant's confession, sections 1180 and 1262 authorized the prosecution at retrial to relitigate this issue using evidence it failed to present at the first trial, and the law of the case doctrine did not require exclusion because the prosecution had, in fact, introduced additional evidence at retrial. (*Mattson, supra,* 50 Cal.3d at pp. 849–853.) As we have shown, *Mattson* is consistent with a long line of cases applying the law of the case doctrine after reversals for insufficient evidence, none of which imposed or even mentioned a "due diligence" limitation on the introduction of new evidence at retrial. We therefore reject defendant's argument.

In arguing for a "due diligence" requirement, defendant also relies on *Mitchell*. There, the court held that because "the government ha[d] had a full and fair opportunity to present its case unhampered by evidentiary error or other impediment, fundamental fairness require[d] application of equitable principles of res judicata (direct estoppel) and law of the case to preclude relitigation" of an alleged prior conviction after the court's prior reversal of an earlier true finding for insufficient evidence. (*Mitchell, supra,* 81 Cal.App.4th at p. 136.) The court reasoned that "when the People on remand did not show there was newly discovered evidence which they, in due diligence, could not have presented at the first trial on the truth of the priors, that decision and its necessary resolution of the legal sufficiency of the evidence for the prior allegations became the law of the case as between these parties. [Citations.]" (*Id.* at p. 155.) Defendant cites this decision in arguing that the law of the case doctrine bars retrial unless the prosecution makes a "due diligence" showing as to new evidence.

█ We conclude that *Mitchell* erred in applying the law of the case doctrine based on the prosecution's failure to show "due diligence." In imposing this requirement, *Mitchell* failed to cite or discuss the statutes and cases that authorize introduction of new evidence, without limitation, on retrial after an appellate reversal for insufficient evidence. Instead, *Mitchell*

cited the lead opinion in *Monge I* and two civil decisions from the First District Court of Appeal, *Bank of America v. Superior Court* (1990) 220 Cal.App.3d 613 [269 Cal.Rptr. 596] (*Bank of America*) and *McCoy v. Hearst Corp.* (1991) 227 Cal.App.3d 1657 [278 Cal.Rptr. 596] (*McCoy*). (*Mitchell, supra,* 81 Cal.App.4th at p. 155.) Regarding *Monge I*, the lead opinion there stated only that, in light of the law of the case doctrine, "the prosecution would have to present additional evidence at a retrial of the prior conviction allegation in order to" overcome the appellate court's determination that the evidence at the first trial was legally insufficient to prove the allegation. (*Monge I, supra,* 16 Cal.4th at p. 845 (lead opn. of Chin, J.).) It said nothing about a "due diligence" requirement and thus does not support *Mitchell*'s imposition of this requirement.

Bank of America also does not support *Mitchell*'s "due diligence" gloss on the law of the case doctrine. There, the court held that where a motion for judgment notwithstanding the verdict (JNOV) is "made and denied by the trial court, and the appellate court reverses the judgment for insufficiency of the evidence," retrial is improper even where the reversal is "unqualified." (*Bank of America, supra,* 220 Cal.App.3d at p. 626.) In reaching this conclusion, the court specifically relied on Code of Civil Procedure section 629, which *mandates* entry of judgment in a civil case, rather than a new trial, when an appellate court finds that the trial court erred in denying a JNOV motion. (*Bank of America, supra,* 220 Cal.App.3d at pp. 624–626.) *Bank of America* is inapposite because Code of Civil Procedure section 629 is inapplicable to a criminal sentencing proceeding, and neither *Mitchell* nor defendant here identifies a similar statute that governs retrial of the prior juvenile adjudication allegation at issue in this criminal case. Moreover, *Mitchell* incorrectly reasoned that "[i]n granting the relief requested, the court in *Bank of America*" relied in part on the "law of the case." (*Mitchell, supra,* 81 Cal.App.4th at p. 150.) On the contrary, the court in *Bank of America* expressly noted that, given its conclusion based on Code of Civil Procedure section 629, it did not need "to determine whether [the plaintiffs'] claims would be barred by law of the case if the action were retried . . . ." (*Bank of America, supra,* 220 Cal.App.3d at p. 627.) Thus, although noting that the law of the case doctrine does not apply where the "evidence . . . produced at a subsequent trial . . . is 'materially,' 'essentially,' or 'substantially' different from that passed upon in the first appeal," the court declined to decide whether the new evidence the plaintiffs "proffered . . . would be sufficient to overcome the law of the case." (*Id.* at p. 621, fn. 3.) Furthermore, *Bank of America*'s holding *absolutely precludes* retrial; it does not allow for an exception based on new evidence that could not have been discovered with reasonable diligence. Finally, the court in *Bank of America* could find "no compelling policy reason" for giving a civil litigant "another day in court" simply because an appellate court, after finding that JNOV should have been entered, fails to follow a statute requiring entry of judgment under these

circumstances. (*Id.* at p. 626.) In the criminal sentencing proceeding now before us, the public policy considerations are decidedly different. As we explained in *Morton* many years ago, retrial of a prior conviction allegation "carries out the policy of the statutes imposing 'more severe punishment, proportionate to their persistence in crime, of those who have proved immune to lesser punishment' [citation], and prevents defendants from escaping the penalties imposed by those statutes through technical defects in . . . proof." (*Morton, supra,* 41 Cal.2d at pp. 544–545.) California "has a strong interest in protecting its citizenry from individuals who, by their repeated criminal conduct, demonstrate an incapacity to reform." (*People v. Levin* (1993) 157 Ill.2d 138 [623 N.E.2d 317, 327, 191 Ill.Dec. 72].) For all of these reasons, *Mitchell*'s reliance on *Bank of America* is erroneous.

*McCoy*, the other First District decision *Mitchell* cited, is factually similar to *Bank of America* and is similarly inapposite. In *McCoy*, the defendants, whose JNOV motion had been denied, moved for entry of judgment in the trial court on remand after our "unqualified reversal" of judgments against the defendants "for insufficiency of the evidence." (*McCoy, supra,* 227 Cal.App.2d at pp. 1658–1659.) The trial court granted the motion and entered judgments for the defendants. (*Id.* at pp. 1658–1659.) The Court of Appeal affirmed the judgments for the defendants, following *Bank of America* and holding that, where JNOV motions are improperly denied, Code of Civil Procedure section 629 modifies the general rule that an unqualified reversal for insufficient evidence remands the case for a new trial. (*McCoy, supra,* 227 Cal.App.3d at p. 1662.) Because *McCoy* simply followed *Bank of America* and applied Code of Civil Procedure section 629, *Mitchell*'s reliance on *McCoy*, like its reliance on *Bank of America*, is erroneous.

For all of the reasons discussed above, we reject defendant's argument that "retrial should be barred under the doctrine of the law of the case unless the prosecution can establish that it has discovered new evidence which could not have been presented at the first trial through the exercise of due diligence."

## III. RES JUDICATA/COLLATERAL ESTOPPEL

As generally understood, "[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy." (7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 280, p. 820.) The doctrine "has a double aspect." (*Todhunter v. Smith* (1934) 219 Cal. 690, 695 [28 P.2d 916].) "In its primary aspect," commonly known as claim preclusion, it "operates as a bar to the maintenance of a second suit between the same parties on the same cause of action. [Citation.]" (*Clark v. Lesher* (1956) 46 Cal.2d 874, 880 [299 P.2d 865].) "In its secondary aspect," commonly known as collateral estoppel, "[t]he prior judgment . . . 'operates' " in "a second suit . . . based on a different cause of action . . . 'as an estoppel or

conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" (*Ibid.*) "The prerequisite elements for applying the doctrine to either an entire cause of action or one or more issues are the same: (1) A claim or issue raised in the present action is identical to a claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding. [Citations.]" (*Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 556 [90 Cal.Rptr.2d 469].) Defendant asserts that both aspects of the doctrine bar retrial of his alleged prior conviction.

Defendant's claim raises a threshold issue that we have not yet decided: whether either aspect of the res judicata doctrine "even applies to further proceedings in the same litigation. [Citation.]" (*People v. Memro* (1995) 11 Cal.4th 786, 821 [47 Cal.Rptr.2d 219, 905 P.2d 1305].) As the court observed in *Mitchell*, "[t]he traditional application of such doctrines [is] to 'successive prosecutions' [citation] or rulings from a former action [citation]." (*Mitchell, supra,* 81 Cal.App.4th at pp. 147–148.) For example, as we have explained, appellate court judgments establish the law that " 'must be applied in the subsequent stages of the cause' "—i.e., the law of the case—" 'and they are *res adjudicata* in *other* cases as to every matter adjudicated.' " (*Dept. of Water & Power v. Inyo Chem. Co.* (1940) 16 Cal.2d 744, 750 [108 P.2d 410], italics added.) Relying principally on *U.S. v. Bailin* (7th Cir. 1992) 977 F.2d 270 (*Bailin*), defendant asserts that "[f]ederal courts and courts from other states have routinely applied collateral estoppel, or direct estoppel, to bar further proceedings in the same action." However, as defendant correctly notes, we specifically questioned *Bailin*'s holding in *People v. Santamaria* (1994) 8 Cal.4th 903, 915, footnote 5 [35 Cal.Rptr.2d 624, 884 P.2d 81]. There, after reviewing relevant high court authority, "we question[ed] whether collateral estoppel applies to [retrial in] the *same* proceeding where the government *won* by securing a conviction of the substantive count" and the conviction was reversed on appeal. (*Id.* at p. 913; see also *People v. Memro, supra,* 11 Cal.4th at p. 821 ["[i]t is questionable whether the doctrine of collateral estoppel even applies to further proceedings in the same litigation"].) Ultimately, we did not decide the question in *Santamaria* because we found that the collateral estoppel claim in that case failed "on the merits" for other reasons. (*People v. Santamaria, supra,* 8 Cal.4th at p. 916.)

Similarly, in this case, we need not resolve this threshold question because defendant's res judicata claim fails for other reasons. Initially, we agree with the People that neither aspect of res judicata applies because an appellate reversal, for insufficient evidence, of a true finding regarding an alleged prior conviction or juvenile adjudication does not generally constitute a final decision on the merits regarding the truth of the alleged prior

conviction or juvenile adjudication.[5] As previously discussed, where an appellate court finds that the evidence at trial was insufficient to support the verdict, the "normal rule" is that the losing party on appeal is "entitled to a retrial" unless the record shows " 'that on no theory grounded in reason and justice could the party defeated on appeal make a further substantial showing in the trial court in support of his cause.' [Citations.]" (*Boyle, supra,* 71 Cal.2d at pp. 232–233, fn. 3.) Here, nothing in the record suggests that, at a retrial, the People would be unable to make the necessary showing regarding the declaration of wardship, and defendant has never contended otherwise.[6] *Monge I* and *Monge II* established that such retrials are not precluded by double jeopardy principles, and we found earlier in this opinion that such retrials are not precluded by due process principles or the law of the case doctrine. Thus, "the Court of Appeal should not have departed from the normal rule that [the People were] entitled to a retrial" on defendant's alleged prior juvenile adjudication. (*Boyle, supra,* 71 Cal.2d at p. 233, fn. 3.) Given that the Court of Appeal should have ordered a new trial of the alleged prior juvenile adjudication, its reversal of the true finding for insufficient evidence lacks the requisite finality for purposes of applying res judicata or collateral estoppel. (See *Pillsbury v. Superior Court* (1937) 8 Cal.2d 469, 472 [66 P.2d 149] [appellate order reversing for further proceedings "is not an adjudication in the same sense as a final judgment" for purposes of applying res judicata]; *Board of Education v. Fowler* (1861) 19 Cal. 11, 26 [appellate decision reversing judgment and remanding is not a "final judgment" that would bar subsequent action].)

Our conclusion is fully consistent with the high court's decision in *Monge II.* As previously explained, there the high court held that where an appellate court finds insufficient evidence to support a true finding regarding an alleged prior conviction, the order reversing the finding lacks the " 'constitutional finality' " to trigger double jeopardy protections and, therefore, does not preclude retrial. (*Monge II, supra,* 524 U.S. at p. 729.) The purposes of the double jeopardy and res judicata doctrines substantially overlap. We have explained that the purposes of the res judicata doctrine include "prevent[ing]

---

[5] In their reply brief in this court, the People also argue that collateral estoppel does not apply for the additional reason that "[t]he factual issue to be litigated in a retrial of the strike—whether the required juvenile wardship declaration exists—was never litigated or determined in a former proceeding," inasmuch as defendant did not contest the issue at trial. Because the People did not raise this argument in either the Court of Appeal or their opening brief in this court, we decline to address it. (See *Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11 [142 Cal.Rptr. 429, 572 P.2d 43].)

[6] As previously noted, defendant admitted at trial that he had sustained a "true finding" in juvenile court in 1995 for striking someone with a baseball bat, and his counsel told the jury during closing argument that "[t]here's not an issue" regarding defendant's "priors." Moreover, the probation department's sentencing report in this case states that defendant was committed to a juvenile ranch facility as a result of the true finding in the 1995 juvenile court proceeding.

inconsistent judgments which undermine the integrity of the judicial system" and "preventing a person from being harassed by vexatious litigation. [Citation.]" (*People v. Taylor* (1974) 12 Cal.3d 686, 695 [117 Cal.Rptr. 70, 527 P.2d 622].) Similarly, the high court has explained that the purposes of the double jeopardy clause include preserving "the integrity of a final judgment" (*United States v. Scott* (1978) 437 U.S. 82, 92 [57 L.Ed.2d 65, 98 S.Ct. 2187]) and protecting individuals "from the harassment and vexation of unbounded litigation." (*Arizona v. Manypenny* (1981) 451 U.S. 232, 246 [68 L.Ed.2d 58, 101 S.Ct. 1657].) The high court has also observed that "[a] primary purpose served" by the double jeopardy clause—preserving the finality of judgments—"is akin to that served by the doctrines of *res judicata* and collateral estoppel." (*Crist v. Bretz* (1978) 437 U.S. 28, 33 [57 L.Ed.2d 24, 98 S.Ct. 2156].) Defendant offers no reason for ignoring these overlapping purposes and refusing to apply, in the res judicata context, *Monge II*'s holding that an appellate reversal, for insufficient evidence, of a true finding on a prior conviction allegation lacks the requisite finality for purposes of the double jeopardy clause.

The conclusion that res judicata does not apply here is also consistent with our prior decision in *Mattson*. As previously explained, *Mattson* held that after an appellate court reverses a conviction because the evidence at trial was insufficient to establish the admissibility of confessions, the prosecution on remand may "relitigate" that issue and "introduce[] evidence [that] had not been presented at the first trial . . . ." (*Mattson, supra*, 50 Cal.3d at p. 849.) In rejecting the defendant's many arguments against this conclusion, we held that "[n]either constitutional nor 'equitable' double jeopardy *nor collateral estoppel considerations* bar relitigation of the admissibility of defendant's confessions in this case." (*Id.* at p. 853, fn. 16, italics added.) Although we did not explain the basis for this conclusion, our holding in *Mattson* is, nevertheless, inconsistent with defendant's assertion of collateral estoppel in this case. In short, because defendant cannot establish one of the threshold requirements for application of res judicata—finality of the prior decision— his attempt to invoke either aspect of that doctrine necessarily fails.[7]

---

[7] The cases defendant cites do not require a different conclusion. They address the estoppel effect of *a jury's final* verdict *acquitting* a defendant of one count in a multicount complaint, during retrial on a *separate* count in the complaint after a mistrial or appellate reversal as to that *separate* count. (*U.S. v. Romeo* (9th Cir. 1997) 114 F.3d 141, 144; *U.S. v. Shenberg* (11th Cir. 1996) 89 F.3d 1461, 1478; *Bailin, supra*, 977 F.2d at pp. 275–276; *U.S. v. Seley* (9th Cir. 1992) 957 F.2d 717, 720–723; *U.S. v. Corley* (11th Cir. 1987) 824 F.2d 931, 935–937; *U.S. v. Shenberg* (S.D.Fla. 1993) 828 F.Supp. 968, 970.) They are consistent with our long-standing rule that "where a defendant is tried on multiple counts of a single information, *each count being considered as a separate and distinct offense*, the doctrine of res judicata operates to preclude the relitigation of issues *finally determined* upon retrial of only one count. [Citation.]" (*People v. Ford* (1966) 65 Cal.2d 41, 50 [52 Cal.Rptr. 228, 416 P.2d 132], italics added.) They do not present the issue now before us: whether an *appellate reversal* of a jury's true finding

Moreover, we find that even if defendant could satisfy the technical, threshold requirements of the res judicata doctrine, application of the doctrine would be inappropriate here. Whether res judicata applies in a given context is not simply a matter of satisfying the doctrine's technical requirements. As we have explained, " 'the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a nineteenth century pleading book, but with realism and rationality.' [Citations.] Accordingly, the public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy. [Citation.]" (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 343 [272 Cal.Rptr. 767, 795 P.2d 1223] (*Lucido*).) Thus, "[w]e have repeatedly looked to the public policies underlying the doctrine before concluding that collateral estoppel should be applied in a particular setting. [Citation.]" (*Id.* at pp. 342–343.) We have also recognized that public policy considerations may warrant an exception to the claim preclusion aspect of res judicata, at least where the issue is a question of law rather than of fact. (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 620–622 [47 Cal.Rptr.2d 108, 905 P.2d 1248]; *Greenfield v. Mather* (1948) 32 Cal.2d 23, 35 [194 P.2d 1]; *Guardianship of Di Carlo* (1935) 3 Cal.2d 225, 235 [44 P.2d 562].) As previously noted, an appellate court's determination "that the evidence is insufficient to justify a finding or a judgment is necessarily a decision upon a question of law." (*Estate of Baird*, *supra*, 193 Cal. at p. 238; see also *Sharon v. Sharon* (1889) 79 Cal. 633, 672 [22 P. 26].)

Looking at the relevant policy considerations, we conclude that application of the res judicata doctrine is inappropriate here, even if defendant could otherwise satisfy the doctrine's technical requirements. Regarding the integrity of the criminal justice system, declining to apply res judicata principles after appellate reversal of a fact finder's true finding on a prior conviction allegation does not create a risk of "inconsistent verdicts." (*Lucido*, *supra*, 51 Cal.3d at p. 347.) On the other hand, applying such principles under these circumstances would "undermine public confidence in the judicial system" (*ibid.*), because the public has a substantial interest in the implementation of statutes imposing more severe punishment on " 'persisten[t]' " offenders who " 'have proved immune to lesser punishment,' " and in "prevent[ing]" such offenders "from escaping the penalties imposed by those statutes through technical defects in . . . proof." (*Morton*, *supra*, 41 Cal.2d at pp. 544–545.) As the high court has explained, where "a State adopts the policy of imposing heavier punishment for repeated offending, there is manifest propriety in

regarding a strike allegation has estoppel effect with respect to a retrial of *the same* strike allegation.

guarding against the escape from this penalty those whose previous conviction was not suitably made known to the court at the time of their trial." (*Graham v. West Virginia* (1912) 224 U.S. 616, 626 [56 L.Ed. 917, 32 S.Ct. 583].) "Either a defendant has the requisite number of prior convictions, or he does not," and "[s]ubjecting him to a second proceeding at which the State has the opportunity to show those convictions is not unfair and will enhance the accuracy of the proceeding by ensuring that the determination is made on the basis of competent evidence." (*Caspari, supra,* 510 U.S. at p. 396.) Moreover, applying res judicata principles here "might create disincentives that would" prompt the Legislature to cut back on the "trial-like protections" it has, as "a matter of legislative grace," accorded defendants who "face dramatic increases in their sentences as a result of recidivism enhancements." (*Monge II, supra,* 524 U.S. at p. 734.) Thus, the goal of preserving the integrity of the justice system weighs against applying the res judicata doctrine in this context.

We disagree with defendant that application of res judicata principles is necessary to "prevent [him] from being harassed by multiple trials on the same allegation." Although defendant's approach "would eliminate repetitive litigation," "[t]he essence of vexatiousness . . . is not mere repetition. Rather, it is harassment through baseless or unjustified litigation. [Citation.] [Defendant] does not assert that the criminal proceedings in this case are intended to harass." (*Lucido, supra,* 51 Cal.3d at p. 351.) As just explained, the public has a legitimate expectation that persons with prior convictions who are convicted of new offenses will not, "through technical defects in . . . proof," "escap[e]" the increased punishment statutorily proscribed to reflect " 'their persistence in crime . . . .' " (*Morton, supra,* 41 Cal.2d at pp. 544–545.) "For this reason, it is neither vexatious nor unfair" (*Lucido, supra,* 51 Cal.3d at p. 351) to permit retrial of prior conviction allegations where a defendant is properly convicted of a new crime and an appellate court reverses the true finding on the prior convictions for insufficient evidence, at least where evidence exists to correct the defects in proof.

Finally, considerations of judicial economy do not justify application of res judicata principles in this context. Because most failures of proof like the one at issue here are inadvertent, rather than strategic or otherwise intentional, the number of retrials our conclusion permits would, no doubt, be fairly small. Moreover, a trial of a prior conviction allegation "is simple and straightforward," and "[o]ften . . . involves only the presentation of a certified copy of the prior conviction along with the defendant's photograph and fingerprints. In many cases, defendants offer no evidence at all, and the outcome is relatively predictable." (*Monge I, supra,* 16 Cal.4th at p. 838 (lead opn. of Chin, J.).) Thus, the judicial resources saved by precluding retrials of prior conviction allegations would be minimal. Any concern about judicial

economy is insufficient to overcome California's "strong interest" in protecting its citizens from recidivists. (*People v. Levin, supra,* 623 N.E.2d at p. 327.) Thus, the balance of policy interests justifies our refusal to apply either aspect of the res judicata doctrine in the present context.

## IV. LEGISLATIVE INTENT

Defendant argues that retrial of the prior juvenile adjudication allegation "should be barred because the statutes which grant[ed] [him] a right to an adversarial hearing on the truth of [the] allegation suggest that the Legislature did not want the prosecution to have a remedy from a not true finding." In support of his argument, he cites statutes requiring the prosecution to plead and prove each prior conviction that qualifies as a strike, and requiring the jury (or the court if a jury is waived) to try the alleged prior conviction and make a finding on the allegation. (§§ 667, subd. (f)(1), 1025, subd. (b), 1158.) He also asserts that no statute authorizes the People to "appeal . . . from a not true finding to a prior conviction allegation" or "to seek a second trial" on such an allegation "based on the discovery of new evidence." This statutory framework, defendant contends, "suggests that the prosecution should not be allowed to proceed with a second trial on" a prior conviction allegation after an appellate reversal of a true finding "for insufficient evidence." "If the trier of fact had properly performed [its] duty, a not true finding would have been entered at the first trial and the matter would have concluded at that time. [A] defendant should not be worse off because he was required to appeal to obtain an accurate result." Moreover, permitting a retrial after an appellate reversal for insufficient evidence "would, in effect, provide the prosecution with a remedy that has been denied it by the Legislature."

(5) For several reasons, we find defendant's legislative intent argument unpersuasive. First, the issue of whether the People have a statutory right to appeal a not true finding on a prior conviction allegation is unsettled and is currently pending before this court. (*People v. Samples,* review granted Feb. 25, 2003, S112201.) Thus, defendant's argument depends on an assumption that may prove incorrect. Second, we find nothing in the pleading and proof requirement of the cited statutes that suggests a legislative intent to preclude retrial after an appellate court reverses, for insufficient evidence, a fact finder's true finding on a prior conviction allegation.[8] Third, were we to construe the cited

---

[8] Although citing section 1025, subdivision (b), in support of his "pleading and proof" argument, defendant does not contend that this statute directly bars retrial by providing that a prior conviction allegation "shall be tried by the jury that tries the issue upon the plea of not guilty . . . ." (See *People v. Moore* (1992) 8 Cal.App.4th 411, 421 [10 Cal.Rptr.2d 286] [§ 1025, subd. (b), "speaks to the initial trial of a defendant who is charged with a new offense and prior convictions alleged for purposes of sentence," and "does not address the circumstance of an appellate reversal of only an alleged prior conviction, coupled with an affirmance

statutes to preclude retrial, "we might create disincentives" that would cause the Legislature to "diminish the[] important procedural protections" it has statutorily provided as "a matter of legislative grace, not constitutional command." (*Monge II, supra,* 524 U.S. at p. 734.) Finally, as defendant explains, his statutory argument rests on the alleged "unfairness of allowing retrial" after an appellate reversal for insufficient evidence while prohibiting retrial after a trier of fact's not true finding. However, for the reasons set forth earlier in this opinion, permitting retrial of a prior conviction allegation after an appellate reversal is not fundamentally unfair.[9]

## V. CONCLUSION

The Court of Appeal erred in concluding that the People may not retry defendant's alleged prior juvenile adjudication. We reverse the judgment of the Court of Appeal insofar as it prohibits retrial of the alleged prior juvenile adjudication. We otherwise affirm the Court of Appeal's judgment.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Brown, J., and Moreno, J., concurred.

---

of the conviction on the primary offense"]; see also *People v. Tindall* (2000) 24 Cal.4th 767, 780 [102 Cal.Rptr.2d 533, 14 P.3d 207] [citing *Moore*].)

[9] Defendant's arguments mirror the reasoning the court in *Mitchell* set forth in holding that the doctrines of res judicata and law of the case bar retrial of an alleged prior conviction after an appellate court reverses a true finding for insufficient evidence. Like defendant, the court in *Mitchell* assumed that "the People do not have the right to appeal" (*Mitchell, supra,* 81 Cal.App.4th at p. 154) a not true finding and emphasized that "California statutorily provides [a] defendant the hallmarks of a trial on guilt or innocence on the truth of prior conviction allegations, including the mandate that a true or not true finding be made . . . ." (*Id.* at p. 155, fn. omitted.) Based on these considerations, the court in *Mitchell* found "the requisite showing of finality, akin to an acquittal of an offense, for purposes of applying the equitable doctrines of res judicata and law of the case . . . ." (*Ibid.*) For the same reasons we reject defendant's arguments, we reject *Mitchell*'s reasoning and conclusion. We disapprove *People v. Mitchell, supra,* 81 Cal.App.4th 132, to the extent it is inconsistent with this opinion.