[No. F043272. Fifth Dist. Apr. 13, 2004.]

In re JORGE G., a Person Coming Under the Juvenile Court Law.

THE PEOPLE, Plaintiff and Respondent, v.
JORGE G., Defendant and Appellant.

932

COUNSEL

Jeffrey R. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Matthew L. Cate and Jennifer M. Runte, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WISEMAN, J.**—In this case we consider the constitutionality of three gang registration provisions of the Street Terrorism Enforcement and Prevention Act (the STEP Act), as amended by Proposition 21, an initiative approved by the voters in the March 7, 2000, primary election. First, we address a void-for-vagueness challenge to a provision requiring registration as a gang member by any person convicted of, and any person who has had a petition sustained in juvenile court for, "[a]ny crime that the court finds is gang related at the time of sentencing or disposition." (Pen. Code § 186.30, subd. (b)(3).)[1] We apply a limiting construction to the term "gang related" and hold that, as limited, it is not unconstitutionally vague. We also conclude that the record does not contain sufficient evidence to support the juvenile court's finding that the crimes of appellant Jorge G. (the minor) were gang related.

The second provision at issue requires those registering as gang members to provide a local law enforcement agency with a "written statement . . . giving any information that may be required by the law enforcement agency . . . ." (§ 186.32, subd. (a)(1)(C) [for juvenile registrants], subd. (a)(2)(C) [for adult registrants].) The minor contends that the requirement to give "any information that may be required" is unconstitutionally vague; violates his rights against self-incrimination and to free speech, free association, and privacy; and constitutes an improper delegation of authority in violation of the separation-of-powers doctrine. To assist the trial court upon remand, we hold that this provision is constitutional, again subject to a limiting construction.

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

The final provision the minor challenges provides that the registration requirements shall remain in effect for five years after imposition. (§ 186.32, subd. (c).) The minor contends that this constitutes cruel and unusual punishment as applied to him because his offenses were minor compared to the length of time that he is required to register. We hold that requiring the minor to register pursuant to the statute is not cruel and unusual punishment.

We vacate the juvenile court's order, to the extent it directs the minor to register, and remand for a new disposition hearing to provide the People an opportunity to submit additional evidence on the issue of gang relatedness in light of our construction of the statute. We affirm the judgment in all other respects.

## *FACTUAL AND PROCEDURAL HISTORIES*

The minor was arrested on March 27, 2003, outside an apartment building in Tulare. Police found him there among a group of eight to 10 youths after residents reported a disturbance. The arresting officer arrived at the scene and saw the group of youths, six or seven of whom were wearing red clothing, shouting at a resident of the building. Red is the color of the Norteños gangs; the minor was wearing a red shirt and shoes with red markings. The adult resident had the name of the Fresno Bulldogs gang tattooed across his bare chest. When police arrived, the minor was at the front of the group and continued shouting as his companions fled. The minor finally fled as well but was apprehended.

The People filed a juvenile wardship petition charging the minor with disturbing the peace in violation of section 415 and resisting, delaying or obstructing a peace officer in violation of section 148, subdivision (a)(1), both misdemeanors. The minor admitted to the allegations in the petition. The probation report recommended that the minor remain with his family and be placed on probation. Among the recommended conditions of probation was that he register with the police as a gang member pursuant to section 186.30, subdivision (b). At a contested disposition hearing, the minor challenged the gang registration recommendation. After receiving testimony by the arresting officer, the court concluded that the charges were gang related and ordered the minor to register.

## *DISCUSSION*[2]

### I. *"Gang related"*

The STEP Act was enacted by the Legislature in 1988 "to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs . . . ." (§ 186.21.) The STEP Act added sections 186.20 through 186.27 to the Penal Code. (Stats. 1988, ch. 1242, § 1, p. 4127; Stats. 1988, ch. 1256, § 1, p. 4179.)

Proposition 21 amended the STEP Act, adding sections 186.30, 186.31, 186.32, and 186.33. (Voter Information Guide, Primary Elec. (Mar. 7, 2000) text of Prop. 21, §§ 7–9, at <http://Primary2000.ss.ca.gov/VoterGuide/Propositions/21text.htm> [as of April 13, 2004].) Section 186.30 provides that "any person convicted in a criminal court or who has had a petition sustained in a juvenile court in this state" for "[a]ny crime that the court finds is gang related at the time of sentencing or disposition" must register as a gang member with local law enforcement. Section 186.31 requires the court making the gang relatedness finding to advise the defendant of his or her duty to register. Section 186.32 sets forth the steps the defendant must take to comply with the duty to register and section 186.33 makes failure to register a misdemeanor.

█ The minor argues that the term "gang related" in section 186.30, subdivision (b)(3), is unconstitutionally vague. A facial vagueness challenge is based on the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution, and on article I, section 7 of the California Constitution. (*Williams v. Garcetti* (1993) 5 Cal.4th 561, 567 [20 Cal.Rptr.2d 341, 853 P.2d 507].) Under both the federal and the state Constitutions, vagueness invalidates a criminal statute if the statute " 'fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits . . .' " or if it " 'may authorize and even encourage arbitrary and discriminatory enforcement.' [Citation.]" (*People v. Castenada* (2000) 23 Cal.4th 743, 751 [97 Cal.Rptr.2d 906, 3 P.3d 278]; see also *Williams v. Garcetti, supra,* 5 Cal.4th at p. 567.)

---

[2] Acknowledging that he did not raise any of his constitutional issues below, the minor contends that if these issues are not preserved for appeal, this is due to ineffective assistance of counsel. The People concede that "the failure to object does not operate as a waiver on appeal where the issue raised is a question of law that can be resolved without reference to the sentencing record in the trial court," and that the constitutional issues here meet this description. Therefore, we do not address the minor's ineffective-assistance-of-counsel argument.

We faced a constitutional vagueness challenge to the word "gang" in a context similar to the present case in *People v. Lopez* (1998) 66 Cal.App.4th 615 [78 Cal.Rptr.2d 66]. There, the defendant had been sentenced to probation with conditions, including a prohibition on being " 'involved in any gang activities,' " and on " 'associat[ing] with any gang members . . . .' " (*Id.* at p. 622.) We concluded that the word "gang" in this context "is, on its face, uncertain in meaning," and that the condition would be unconstitutional if not for the availability of a limiting construction. (*Id.* at pp. 631–634.) We noted that in *Lanzetta v. New Jersey* (1939) 306 U.S. 451, 453–455 [83 L.Ed. 888, 59 S.Ct. 618], the Supreme Court invalidated a New Jersey antigang statute. In doing so, the court stated that the word "gang" had various definitions in dictionaries and in historical and sociological writings, observing that it could find no definition in statutory or case law. We also cited contemporary dictionary definitions, commenting that "[a]lthough 'gang' has in the recent past likely acquired generally sinister implications, the word has considerable benign connotations," such as " 'a group of persons working under the same direction or at the same task . . . .' " (*People v. Lopez, supra,* 66 Cal.App.4th at p. 631.) In short, the condition as written did not give the defendant sufficient notice of the precluded activities or the persons with whom he should not associate.

Here, absent a statutory definition of the word "gang" in the phrase "gang related," section 186.30, subdivision (b)(3), fails to give the public clear notice of the conduct that will result in the requirement to register as a gang member. But, as in *Lopez,* an appropriate limiting construction is available. In *Lopez,* we held that "gang" in the conditions of probation meant "criminal street gang" as defined in section 186.22 of the STEP Act. Section 186.22, subdivision (f), states:

"As used in this chapter, 'criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."

Section 186.22, subdivision (e), provides:

"As used in this chapter, 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within

three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons . . . ."

A list of 25 enumerated offenses follows. As we observed in *Lopez*, the California Supreme Court in *People v. Gardeley* (1996) 14 Cal.4th 605, 622–623 [59 Cal.Rptr.2d 356, 927 P.2d 713] upheld section 186.22, subdivisions (e) and (f), against a constitutional vagueness challenge, concluding that the statute sufficiently informs the public of what is a criminal street gang. (*People v. Lopez, supra*, 66 Cal.App.4th at p. 634.)

The application of this definition of "gang" is even more appropriate here than it was in *Lopez*. In *Lopez*, the term was used in conditions of probation imposed by the court. Here, it is used in the very same statute as the one in which the definition of "criminal street gang" appears. When the voters approved the addition of section 186.30 to the STEP Act via Proposition 21, the ballot pamphlet placed the entire text of section 186.22 (which was also amended by Proposition 21) before them. (Voter Information Guide, *supra*, text of Prop. 21, § 4.) As a result, both are parts of the same statute, the amended STEP Act.

■ In interpreting a voter initiative, we apply the same principles of construction as when interpreting any other statute. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900 [135 Cal.Rptr.2d 30, 69 P.3d 951].) A part of a statute " 'should not be interpreted in isolation, but . . . in the context of the entire statute of which it is a part, in order to achieve harmony among the parts.' " (*Id.* at p. 903.)

We acknowledge that nothing prevented section 186.30, subdivision (b)(3), from containing the words "criminal street gang" instead of only "gang." But we do not believe the voters intended to make a distinction between the two expressions. We instead conclude the terms are used interchangeably and that the voters intended "gang related" to mean "related to a criminal street gang." The "Findings and Declarations" prefacing Proposition 21 support this conclusion. For instance, subdivision (b) of section 2 states that "[c]riminal street gangs and gang-related violence pose a significant threat to public safety and the health of many of our communities." (Voter Information Guide, *supra*, text of Prop. 21, § 2.)

■ As a result, we adopt the definition of "criminal street gang" set forth in section 186.22, subdivisions (e) and (f), as a limiting construction of the word "gang" in section 186.30, subdivision (b)(3).

"[A] court may reform—i.e., 'rewrite'—a statute in order to preserve it against invalidation under the Constitution, when we can say with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred the reformed construction to invalidation of the statute. By applying these factors, courts may steer clear of 'judicial policymaking' in the guise of statutory reformation, and thereby avoid encroaching on the legislative function in violation of the separation of powers doctrine." (*Kopp v. Fair Pol. Practices Com.* (1995) 11 Cal.4th 607, 660–661 [47 Cal.Rptr.2d 108, 905 P.2d 1248].) These two criteria are met here. Proposition 21 makes clear that the voters' intent is to take steps to control "criminal street gangs" and is better effectuated by adopting this limiting construction rather than invalidating section 186.30, subdivision (b)(3).

We see no need to adopt any limiting construction of the word "related." Although broad in meaning, the word is not vague in this context. " 'Related' is a commonly used word with a broad meaning that encompasses a myriad of relationships. For example, a leading legal dictionary defines 'related' to mean 'standing in relation; connected; allied; akin.' (Black's Law Dict. (6th ed. 1990) p. 1288, col. 1.)" (*Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co.* (1993) 5 Cal.4th 854, 868 [21 Cal.Rptr.2d 691, 855 P.2d 1263].) "[T]he fact that 'related' can encompass a wide variety of relationships does not necessarily render the word ambiguous. To the contrary, a word with broad meaning or multiple meanings may be used for that very reason—its breadth—to achieve a broad purpose." (*Ibid.*) It is evident that in enacting Proposition 21, the voters intended to address broadly the problem of crimes related to criminal street gangs.

■ For the guidance of the juvenile court on remand, we note that the criteria for imposing a sentence enhancement under section 186.22, subdivision (b)(1), include a reference to crimes "committed for the benefit of, at the direction of, or in association with any criminal street gang . . . ." Gang-related crimes within the meaning of section 186.30, subdivision (b)(3), surely include, but are not limited to, all crimes committed for the benefit of, at the direction of, or in association with a criminal street gang.

II. *Sufficient evidence*

With this understanding of the phrase "gang related" in mind, we now address whether the juvenile court's finding of gang relatedness was supported by sufficient evidence. "When an appellant asserts there is insufficient evidence to support the judgment, our review is circumscribed. [Citation.] We review the whole record most favorably to the judgment to determine

whether there is substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could have made the requisite finding under the governing standard of proof." (*In re Jerry M.* (1997) 59 Cal.App.4th 289, 298 [69 Cal.Rptr.2d 148].)

## A. *Standard of proof*

The requisite finding is that the minor's crimes were related to a criminal street gang. We consider this below. Before doing so, we first identify the applicable standard of proof. The minor argues that the court was required to find gang relatedness beyond a reasonable doubt. The People argue that only a preponderance of the evidence is necessary.

In *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348], the United States Supreme Court held that due process requires that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The question here is whether gang registration is an additional punishment, constituting an increase in the maximum punishment otherwise available for the crimes at issue.

We answer this question in light of *People v. Castellanos* (1999) 21 Cal.4th 785 [88 Cal.Rptr.2d 346, 982 P.2d 211]. There was no majority opinion in that case, but two separate concurring opinions agreed on the result. The court considered whether registration as a sex offender pursuant to section 290 constituted punishment for purposes of analysis under the prohibition on ex post facto laws. That prohibition applies only to laws that punish. (*Castellanos, supra,* at pp. 790–791 (lead opn. of George, C. J.).) Both opinions applied United States Supreme Court decisions in which "two factors appear important . . . : whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent." (*Id.* at p. 795 (lead opn. of George, C. J.); see also *id.* at p. 801 (conc. & dis. opn. of Kennard, J.).)

Both opinions concluded that the Legislature did not intend sex offender registration to constitute punishment. (*People v. Castellanos, supra,* 21 Cal.4th at p. 796 (lead opn. of George, C. J.), fn. omitted; *id.* at pp. 802–803 [88 Cal. Rptr.2d 346, 982 P.2d 211] (conc. & dis. opn. of Kennard, J.).) Both opinions also held that the provision was not so punitive as to constitute punishment. (*Id.* at p. 796 (lead opn. of George, C. J.); *id.* at pp. 803–805 (conc. & dis. opn. of Kennard, J.).)

■ Applying these two factors here, we hold that gang-member registration under section 186.30 is not punishment for due process purposes under

*Apprendi.* The voters' purpose in enacting the registration provisions of Proposition 21 was similar to the Legislature's purpose in enacting sex-offender registration requirements to facilitate surveillance of offenders by law enforcement. "Registration requirements generally are based on the assumption that persons convicted of certain offenses are more likely to repeat the crimes and that law enforcement's ability to prevent certain crimes and its ability to apprehend certain types of criminals will be improved if these repeat offenders' whereabouts are known." (*People v. Adams* (1990) 224 Cal.App.3d 705, 710 [274 Cal.Rptr. 94].)

The registration requirement of section 186.30 is no more punitive than sex offender registration. In fact, the requirement at issue here is substantially less onerous because sex-offender registration is for life, while gang-member registration is only for five years from the last imposition. There is no reason the analysis should differ because this case involves the meaning of "punishment" for due process purposes under *Apprendi*, while *Castellanos* involved the meaning of the same word for purposes of the prohibition on ex post facto laws. Consistently, in *People v. Marchand* (2002) 98 Cal.App.4th 1056, 1061–1065 [120 Cal.Rptr.2d 687], the court applied *Castellanos* and concluded that sex-offender registration under section 290 is not punishment for due process purposes under *Apprendi* and therefore need not be based on proof beyond a reasonable doubt.

The minor's reliance on our opinion in *People v. Villela* (1994) 25 Cal.App.4th 54 [30 Cal.Rptr.2d 253] is misplaced. There, we held that narcotics offender registration pursuant to Health and Safety Code section 11590 is punishment for purposes of determining whether a defendant convicted of *conspiracy* to commit an offense enumerated in Health and Safety Code section 11590 could be required to register. The People's argument in favor of registration was that section 182 provides that a person convicted of conspiracy to commit a felony is punishable in the same manner as a person convicted of the felony itself. Registration is punishment, so conspirators to commit enumerated offenses must be required to register, just like those who actually commit the offenses. We agreed, relying on *In re Reed* (1983) 33 Cal.3d 914 [191 Cal.Rptr. 658, 663 P.2d 216], in which the California Supreme Court held that sex offender registration is punishment for purposes of the prohibition on cruel and unusual punishment. (*People v. Villela, supra,* 25 Cal.App.4th at pp. 58–59.)

In light of the Supreme Court's subsequent decision in *Castellanos*, neither *Villela* nor *Reed* is applicable here. In *Castellanos*, Justice Kennard's opinion distinguished *Reed* on the grounds that *Reed* concerned cruel and unusual punishment, and "punishment" is a broader concept in that context than in others. (*People v. Castellanos, supra,* 21 Cal.4th at p. 805 (conc. & dis. opn.

of Kennard, J.).) The lead opinion distinguished *Reed* on similar grounds and expressly disapproved *Reed* to the extent it may have had any implications for the ex post facto context. (*Id.* at pp. 798–799 [88 Cal. Rptr.2d 346, 982 P.2d 211] (lead opn. of George, C. J.).) We recognize that " 'any proposition or principle stated in an opinion is not to be taken as the opinion of the court, unless it is agreed to by at least four of the justices.' [Citations.]" (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 829 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) In *Castellanos*, however, two opinions signed by a total of six justices agreed that *Reed* did not apply in the ex post facto context and implied that it should not apply outside the cruel-and-unusual-punishment context. For these reasons, we conclude that *Reed* does not apply here, nor does *Villela*, which is based on *Reed.*

■ In light of our decision that registration pursuant to section 186.30 is not punishment for purposes of due process under *Apprendi*, the fact that the subject crime was gang related need be proved only by a preponderance of the evidence.

### B. *Requisite finding*

■ The court's registration order is based on a finding that the crimes the minor committed were gang related. This finding is supported by sufficient evidence only if there is evidence that is reasonable, credible, and of solid value supporting each element of gang relatedness. A crime is gang related if it is related to a criminal street gang as defined in section 186.22, subdivisions (e) and (f). The elements of this definition require: (1) an ongoing organization or group, (2) of three or more persons, (3) having as one of its primary activities the commission of the crimes enumerated in section 186.22, subdivision (e)(1)–(25), (4) having a common name or symbol, and (5) whose members individually or collectively have engaged in a pattern of criminal gang activity. This pattern of gang activity must consist of: (a) two or more of the offenses enumerated in section 186.22, subdivision (e)(1)–(25), provided that at least one offense occurred after the effective date of the statute; (b) the last offense occurred within three years of the one before it; and (c) the offenses were committed on separate occasions or by two or more persons.

The minor concedes that elements (1), (2) and (4) were proved adequately. Testimony by the arresting officer and statements in the probation report established that the minor was a member of a Norteños gang, which is an ongoing organization or group of three or more persons having a common name or symbol. Also, the minor's conduct was related to that of his red-clad companions. This leaves elements (3) and (5).

■ To support element (3), there must be substantial evidence that the commission of offenses enumerated in section 186.22, subdivision (e), is a

primary activity of the gang. "Evidence of past or present conduct by gang members involving the commission of one or more of the statutorily enumerated crimes is relevant in determining the group's primary activities." (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 323 [109 Cal.Rptr.2d 851, 27 P.3d 739].) However, evidence sufficient to show only *one* offense is not enough.

"The phrase 'primary activities,' as used in the gang statute, implies that the commission of one or more of the statutorily enumerated crimes is one of the group's 'chief' or 'principal' occupations. (See Webster's Internat. Dict. (2d ed. 1942) p. 1963 [defining 'primary'].) That definition would necessarily exclude the occasional commission of those crimes by the group's members. . . . [¶] Sufficient proof of the gang's primary activities might consist of evidence that the group's members *consistently and repeatedly* have committed criminal activity listed in the gang statute." (*People v. Sengpadychith, supra*, 26 Cal.4th at pp. 323–324.)

We recognize that a gang's primary activities may be shown though expert testimony (*People v. Sengpadychith, supra*, 26 Cal.4th at p. 324; *People v. Gardeley, supra*, 14 Cal.4th at p. 620); however, no expert testimony was presented on this subject. Further, as we shall explain later, the record supports a conclusion that only one enumerated offense was proven. Consequently, it follows that there is insufficient evidence to support element (3).

■ To support element (5), there must be substantial evidence of at least two predicate offenses committed within the specified time frame by the minor or other members of his gang. Here, the record contains sufficient evidence of only one of the offenses enumerated in section 186.22, subdivision (e): a violation of section 422, the making of criminal threats. The minor admitted to a petition alleging that he committed this offense in San Jose on September 15, 2000. Further, the probation report filed in connection with that petition sufficiently establishes that he was a member of a Norteños gang when he committed this offense. That said, there is insufficient evidence that the minor or any other member of his gang committed another enumerated offense, as required.

The People argue that the minor's conduct on March 27, 2003, when he committed the offenses with which he was charged in this case, is sufficient to show additional violations of section 422. Section 422 provides:

"Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually

carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

The record contains some evidence of threats made on the day of the minor's arrest. The arresting officer testified that he went to the scene of the disturbance twice on that day. The first time, the minor and his companions apparently were not present when the officer arrived, but the officer met and spoke with the victim. According to the officer, the victim stated that the minor had been there earlier and threatened to come back and shoot the victim. In addition, when the minor was arrested, the officer heard him "yelling obscenities at the victim," and "calling him a bitch, calling him out to fight."

We agree that this evidence arguably supports the contention that on the day of his arrest, the minor willfully threatened to commit a crime which would result in death or great bodily injury. But there is no evidence in the record regarding (a) with what specific intent, if any, such threats were made; (b) whether the threats were so unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution; or (c) whether the victim was reasonably in sustained fear for his safety. Consequently, the record does not support a finding of a second violation of section 422.

In sum, the record contains evidence that the minor was a Norteño and violated sections 415 and 148, subdivision (a)(1), while in the company of other Norteños. But a finding of a gang-related crime within the meaning of section 186.30 must be based on more than this: At least two predicate offenses must also be proved, and the commission of enumerated offenses must be proved to be a primary activity of the group. The record here lacks sufficient evidence of these additional facts.

## C. *Remand*

In light of our conclusion, we remand to the juvenile court for a new hearing on the question of gang relatedness. Although we reverse the order to register, we conclude the People are entitled to present sufficient evidence in light of the definition and standard of proof that we set forth in this opinion.

In doing so, we conclude that a second disposition hearing will not violate the prohibition on double jeopardy. In *People v. Monge* (1997) 16 Cal.4th 826, 845 [66 Cal.Rptr.2d 853, 941 P.2d 1121], the California Supreme Court held that a retrial on prior convictions alleged for purposes of sentence enhancement, following a reversal of the sentence due to insufficient evidence, does not violate the bar on double jeopardy. The United States Supreme Court agreed, affirming in *Monge v. California* (1998) 524 U.S. 721 [141 L.Ed.2d 615, 118 S.Ct. 2246]. The protection against double jeopardy does not apply because "[t]he pronouncement of sentence simply does not 'have the qualities of constitutional finality that attend an acquittal.' [Citation.]" (*Id.* at p. 729.) The same reasoning applies here.

Nor would the imposition of registration upon remand, if the court makes the requisite findings based on sufficient evidence, be prevented by the doctrines of res judicata, collateral estoppel, or law of the case. In *People v. Barragan* (2004) 32 Cal.4th 236 [9 Cal.Rptr.3d 76, 83 P.3d 480], our Supreme Court held that res judicata and collateral estoppel did not bar retrial of a prior juvenile adjudication allegation after reversal for insufficient evidence because, among other reasons, the reversal did not "constitute a final decision on the merits regarding the truth of the alleged prior . . . juvenile adjudication." (*Id.* at pp. 253–254.) The court also held that the law of the case doctrine only bars a different finding after a retrial if the prosecution fails to introduce substantial additional evidence in support of the allegation. The additional evidence the prosecution may adduce is not limited to evidence newly discovered after the original proceeding. (*Id.* at pp. 246–247.) *Barragan* resolved a conflict among the appellate court cases. (See, e.g., *People v. Sotello* (2002) 94 Cal.App.4th 1349 [115 Cal.Rptr.2d 118]; *People v. Scott* (2000) 85 Cal.App.4th 905 [102 Cal.Rptr.2d 622]; *People v. Mitchell* (2000) 81 Cal.App.4th 132 [96 Cal.Rptr.2d 401], overruled by *People v. Barragan, supra,* 32 Cal.4th at p. 259, fn. 9.) The court's reasoning in *Barragan* applies equally well where, as here, the trial court's findings supporting imposition of gang registration were based on insufficient evidence and the matter is remanded for a new disposition hearing.

The minor's appeal includes a challenge to the admission of certain testimony at the disposition hearing. Because we vacate the order to register and remand for a new hearing, we do not address that issue.

III. *"Any information that may be required"*

On several constitutional bases, the minor challenges the requirement in section 186.32 that he provide "[a] written statement . . . giving any information that may be required by the law enforcement agency" upon registration as a gang member. We address these issues because of the possibility that the court will again order registration on remand.

## A. *Vagueness*

The minor argues that the "any information" requirement is unconstitutionally vague. As indicated above, a statute is unconstitutionally vague if it " 'fail[s] to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits,' " or if it " 'may authorize and even encourage arbitrary and discriminatory enforcement.' " (*People v. Castenada, supra,* 23 Cal.4th at p. 751.)

The requirement to provide "any information that may be required by the law enforcement agency" does give the public clear notice of what it must do when registering—i.e., give law enforcement whatever information it requests. But such an unlimited obligation may authorize arbitrary and discriminatory enforcement. Under the literal meaning of this provision, law enforcement could demand any information from a registrant. These informational demands could range from his or her name and address to detailed and intimate personal information. They could include the identities of all the gang members the registrant knows and all crimes they and the registrant have committed or plan to commit. Conceivably, law enforcement could base its decision on how much information to demand based on any or no reason.

In *People v. Sanchez* (2003) 105 Cal.App.4th 1240 [130 Cal.Rptr.2d 219] (*Sanchez II*) and *People v. Bailey* (2002) 101 Cal.App.4th 238 [123 Cal.Rptr.2d 729], the Sixth District Court of Appeal concluded that the "any information" provision of section 186.32 was impermissibly vague and subjected it to a limiting construction. We agree and do the same.

In *Bailey*, the defendant contended that the "any information" requirement is unconstitutionally vague. After noting that a statute will not be held void for vagueness if a reasonable limiting construction is available, the court held that section 186.32 "may reasonably be construed to require descriptive or identifying information that aids law enforcement in monitoring the whereabouts of gang members . . . ." (*People v. Bailey, supra,* 101 Cal.App.4th at p. 245.) The court made clear that it was only referring to information about the registrant himself: "[W]e have determined that the questioning [by law enforcement pursuant to the requirement to provide 'any information'] is limited to descriptive information *about the registrant* . . . ." (*Id.* at p. 246, italics added.)

In *Sanchez II*, the court referred to a previous decision in the same case, *People v. Sanchez* (Cal.App.) (*Sanchez I*), review granted Nov. 13, 2002, S110263. Although acknowledging that review of *Sanchez I* is pending, the court also noted that the Supreme Court limited its review to another issue. The court then restated its *Sanchez I*

holding regarding the meaning of the " 'any information' " provision of section 186.32. It construed the provision "to mean that the registrant must provide information from which the law enforcement agency could locate him or her. . . . [S]uch information would include the person's full name, any aliases or . . . monikers or change of name, the person's date of birth, residence address, description and license plate number of any vehicle the person owns or drives, and information regarding the person's employment or school." (*Sanchez II, supra,* 105 Cal.App.4th at pp. 1243–1244.) On this basis, the court held that being asked what areas were frequented by the registrant was impermissibly vague and need not be answered. (*Id.* at p. 1244.)

■ The purpose of registration requirements is specific. They " 'generally are based on the assumption that persons convicted of certain offenses are more likely to repeat the crimes and that law enforcement's ability to prevent certain crimes and its ability to apprehend certain types of criminals will be improved if these repeat offenders' whereabouts are known.' [Citation.]" (*People v. Bailey, supra,* 101 Cal.App.4th at p. 245.) Based on this stated purpose, we construe section 186.32 to mean that the registrant may be required to provide information enabling law enforcement to identify and locate the registrant.

■ The People rely on *Sanchez II* and *Bailey* and, in doing so, implicitly concede that a limiting construction of section 186.32 is appropriate. That said, the People argue for a different limiting construction than the one the court adopted in those cases: "[T]he registration requirement set forth in section 186.32 . . . reasonably requires the gang registrant to provide information as required by a law enforcement agency to locate known gang *associates*." (Italics added.) In other words, it seems, the People would have us interpret the statute to allow police to demand from registrants the identities and whereabouts of other members of their gangs. For the reasons set forth below, we conclude that criminalizing a refusal to name and help locate one's gang associates would violate the constitutional protection against self-incrimination.

### B. *Self-incrimination*

The minor contends that the "any information" requirement violates the privilege against self-incrimination. The limiting construction we adopt renders the provision constitutional.

■ The privilege against self-incrimination is violated by a registration statute if it requires disclosure of information that would "prove a significant 'link in a chain' of evidence tending to establish" the registrant's commission

of a crime (*Marchetti v. United States* (1968) 390 U.S. 39, 48 [19 L.Ed.2d 889, 88 S.Ct. 697], fn. omitted)) where the statute is "directed at a highly selective group inherently suspect of criminal activities." (*Albertson v. SACB* (1965) 382 U.S. 70, 79 [15 L.Ed.2d 165, 86 S.Ct. 194].) The United States Supreme Court has upheld the privilege against self-incrimination against statutes requiring registration of members of the Communist Party (*id.* at p. 81); requiring disclosure of participation in illegal gambling (*Marchetti v. United States, supra,* 390 U.S. at pp. 60–61); requiring disclosure of possession of an unregistered firearm (*Haynes v. United States* (1968) 390 U.S. 85, 100 [19 L.Ed.2d 923, 88 S.Ct. 722]); and requiring disclosure of possession of marijuana (*Leary v. United States* (1969) 395 U.S. 6, 27 [23 L.Ed.2d 57, 89 S.Ct. 1532]).

 On the other hand, routine booking information is not incriminatory and a requirement to provide it does not violate the privilege against self-incrimination. (*Pennsylvania v. Muniz* (1990) 496 U.S. 582, 601–602, & fn. 14 [110 L.Ed.2d 528, 110 S.Ct. 2638]; *People v. Rucker* (1980) 26 Cal.3d 368, 387 [162 Cal.Rptr. 13, 605 P.2d 843], superseded on other grounds by constitutional amendment as stated in *People v. Hall* (1988) 199 Cal.App.3d 914, 919–920 [245 Cal.Rptr. 458].)

Unless limited in the manner we have specified, the "any information" requirement would allow law enforcement to require disclosures that would be "a significant 'link in a chain' " in proving that gang registrants have committed crimes. (*Marchetti v. United States, supra,* 390 U.S. at p. 48, fn. omitted.) This is particularly true since active, knowing participation in a criminal street gang is an element of a crime defined by section 186.22, subdivision (a). For instance, to require disclosure of the identities of other gang members with whom the registrant associates would obviously help in proving that the registrant is a knowing participant in a gang. But because we construe the registration requirement as allowing law enforcement only to demand identifying and locational information about the registrant, there is no violation of the privilege against self-incrimination.

### C. *Free speech and association*

The minor contends that the requirement to provide "any information" violates his constitutional right to free speech because it compels him to speak against his will. In light of our limiting construction, the statute is constitutional.

"[T]he protections of the First Amendment . . . do not afford a witness the right to resist inquiry in all circumstances." (*Barenblatt v. United States* (1959) 360 U.S. 109, 126 [3 L.Ed.2d 1115, 79 S.Ct. 1081].) The right to refuse to speak must give way where "the State [can] show a substantial relation between the information sought and a subject of overriding and compelling state interest." (*Gibson v. Florida Legislative Comm.* (1963) 372 U.S. 539, 546 [9 L.Ed.2d 929, 83 S.Ct. 889].)

 The requirement to supply routine booking information passes this First Amendment test. In *People v. Quiroga* (1993) 16 Cal.App.4th 961 [20 Cal.Rptr.2d 446], the court considered a First Amendment challenge to the requirement to disclose one's identity at booking. Although the refusal to speak is protected, the court held, the individual's interest must yield to the strong "public interest in discovering the identity of a suspect;" "[t]he routine booking interview is an indispensable procedure in the efficient administration of justice." Therefore, the requirement to respond to routine booking questions does not violate the First Amendment. (*Id.* at pp. 968–972.)

 Applying the same approach, we conclude that the public interest in detecting and preventing crime takes precedence over a gang registrant's private interest in declining to provide identifying and locational information about him- or herself.

The minor also argues that section 186.32 violates his constitutional right to free association "by potentially conditioning the exercise of this freedom upon a requirement that the registrant inform upon those with whom he chooses to associate." In light of our holding that the statute requires only identifying and locational information about the registrant, this argument has no merit.

### D. *Privacy*

The minor argues that the "any information" provision violates his constitutional right to privacy because it permits police to make intrusive inquiries. Under the limiting construction we adopt, there is no constitutional violation.

 The California Constitution contains an express privacy protection, added as a constitutional amendment by voter initiative. (Cal. Const., art. I, § 1.) A purpose of the provision is to deter unnecessary collection of personal

information by the government. (*White v. Davis* (1975) 13 Cal.3d 757, 774 [120 Cal.Rptr. 94, 533 P.2d 222].) But "[i]nvasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 38 [26 Cal.Rptr.2d 834, 865 P.2d 633].) Assuming the minor has a protected privacy interest in information about himself, we nevertheless conclude that the statute's impingement on this interest is justified by a competing interest.

In *Loder v. Municipal Court* (1976) 17 Cal.3d 859, 864 [132 Cal.Rptr. 464, 553 P.2d 624], the court considered whether retention by law enforcement of records of arrests that do not lead to convictions violated the California Constitution. The court held that it did not. The state has a substantial interest in retaining these records in order to "protect the public from recidivist offenders," and, in light of statutory limits on dissemination of arrest records outside of law enforcement, there was no violation of the right to privacy. (*Id.* at pp. 864, 869–877.)

The same reasoning applies here. The state has a strong interest in collecting information that enables law enforcement to identify and locate persons adjudicated to have committed gang-related crimes. The burden on registrants' privacy interests is minimized by the provision in the statute that "[t]he statements, photographs and fingerprints required under this section shall not be open to inspection by any person other than a regularly employed peace or other law enforcement officer." (§ 186.32, subd. (d).) The state's interest justifies this limited intrusion on the minor's privacy.

 The United States Constitution is less protective of privacy than the California Constitution. (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 326, 327 [66 Cal.Rptr.2d 210, 940 P.2d 797].) Therefore, the registration requirement, as we interpret it, does not violate privacy rights under the United States Constitution.

### E. *Delegation*

The minor argues that the "any information" requirement is an unconstitutional delegation of legislative power to law enforcement officials in violation of the separation-of-powers doctrine because it "gives local police the authority to ask any questions they want of gang registrants at the time of registration." The limiting construction we adopt, once again, vitiates the minor's position.

 An executive agency's exercise of its power to apply a statute does not violate the separation-of-powers doctrine where the "fundamental policy

determinations" are contained in the legislation, and the legislation "establish[es] a yardstick guiding the administrator . . . ." (*People v. Wright* (1982) 30 Cal.3d 705, 713 [180 Cal.Rptr. 196, 639 P.2d 267].) In *Wright*, the court held that there was no unconstitutional delegation of power in the Legislature's decision to assign the Judicial Council the task of establishing criteria for imposing the upper and lower prison terms under the then new system of determinate sentencing. (*Id.* at pp. 713–714.) The assignment to police of the responsibility for collecting identifying and locational information on gang registrants does not even come close to violating the standards set forth in *Wright*.

## IV. Cruel and unusual punishment

The minor argues that the registration requirement is cruel and unusual punishment under article I, section 17 of the California Constitution and the Eighth Amendment to the United States Constitution.[3]

The case law is unsettled on whether offender registration statutes impose punishment at all, as indicated in the standard-of-proof discussion above. In *In re Reed, supra,* 33 Cal.3d 914, the California Supreme Court considered whether lifetime sex offender registration for misdemeanor offenses was punishment or was cruel and unusual. The court gave positive answers to both questions. In *People v. Castellanos, supra,* 21 Cal.4th 785, by contrast, the court concluded that sex offender registration is not punishment for purposes of ex post facto analysis.

Although the lead opinion in *Castellanos* casts doubt on *Reed*, its express language merely states that "*Reed* should be disapproved to the extent that decision can be interpreted as suggesting that sex offender registration constitutes punishment for purposes of ex post facto analysis." (*People v. Castellanos, supra,* 21 Cal.4th at p. 798 (lead opn. of Geroge, C. J.).) The concurring and dissenting opinion states that it is not intended to undermine the holding of *Reed* so far as cruel and unusual punishment is concerned. (*Id.* at p. 805 (conc. & dis. opn. of Kennard, J.).) *Reed* is thus still the law

---

[3] The California Supreme Court granted review of *In re Walter S.*, (Cal.App.), review granted September 19, 2001, S099120, to consider this issue. The court also granted review of *In re Adrian R.* ▌ (Cal.App.), review granted January 22, 2003, S111812, and *Sanchez I,* ▌ (Cal.App.), in which the same issue is raised, and deferred further action pending disposition of *Walter S.*

with respect to the meaning of "punishment" for purposes of cruel and unusual punishment analysis, at least with respect to sex offender registration.[4]

We need not determine whether gang registration is punishment for purposes of cruel-and-unusual-punishment analysis, however. Even if it is, it is not cruel or unusual in this case. A punishment may be cruel and unusual if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424 [105 Cal.Rptr. 217, 503 P.2d 921] fn. omitted.) A determination of whether a punishment is cruel and unusual may be made based on an examination of the nature of the offense and the offender, "with particular regard to the degree of danger both present to society." (*Id.* at p. 425; see also *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196 [2 Cal.Rptr.2d 714].) With respect to the offense, we consider "the totality of the circumstances . . . in the case at bar." (*People v. Dillon* (1983) 34 Cal.3d 441, 479 [194 Cal.Rptr. 390, 668 P.2d 697].) With respect to the offender, we consider his "individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Ibid.*)

Here, in considering the degree of danger the minor presents to society, the record is replete with evidence of his violent behavior and association with gangs over a period of years preceding his commission of the offenses in this case. The minor's school records show that from sixth to eighth grade, he committed 47 disciplinary infractions, including seven described as battery or fighting, two involving hitting other students with rocks, two of "sexual harassment," two of "inappropriately touching girls," and one of "physical injury to a girl." According to the probation report on the section 422 violation discussed above, the minor committed that offense by telling a fellow student she was a "scrap" (i.e., a member of the Sureños, or southern-structured gangs, which are rivals of the Norteños), and later giving her a note reading "I can kill a scrap if you want me to." The minor also had juvenile wardship petitions sustained for two batteries, petty theft, and violating probation by associating with gang members and testing positive for marijuana. The sanctions and rehabilitative measures to which he was subjected for his misbehavior/offenses include participation in the Tulare County Restorative Justice Program, anger management classes, counseling, community service work, expulsion from school, time in juvenile hall, electronic monitoring, and time at the Holden Ranch for Boys juvenile detention facility. These measures failed to prevent subsequent offenses. The

---

[4] The California Supreme Court has granted review of *In re Alva█* (Cal.App.), review granted September 19, 2001, S098928, in which the question is again presented whether lifetime registration for a misdemeanor sex offense is cruel and unusual punishment.

fact that law enforcement will be able to track the minor for five years if registration is reimposed on remand does not shock the conscience.

## *DISPOSITION*

The judgment is reversed with respect to the order to register. The judgment is affirmed in all other respects. The case is remanded to the juvenile court for a new disposition hearing.

Buckley, Acting P. J., and Cornell, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 23, 2004.