[No. A106264. First Dist., Div. Four. July 21, 2004.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN FRANCISCO COUNTY, Respondent;
CAMILLE JOHNSON et al., Real Parties in Interest.

## COUNSEL

Bill Lockyer, Attorney General, and Amy Haddix, Deputy Attorney General, for Petitioner.

No appearance for Respondent.

Arthur K. Wachtel for Real Parties in Interest.

C. Zadik Shapiro for Real Party in Interest David Larsen.

## OPINION

**SEPULVEDA, J.**—The People of the State of California seek to overturn a trial court order dismissing gang charges under the California Street Terrorism Enforcement and Prevention Act (Penal Code § 186.20 et seq., hereafter, the STEP Act).[1] The People contend the trial court erred in ruling (1) the STEP Act does not apply when the only alleged gang activity is felony vandalism, and (2) application of the STEP Act to real parties in interest would be unconstitutional.

We conclude STEP Act allegations were properly included in the indictment. We grant the People's petition for writ of mandate.

### BACKGROUND

After hearing testimony from 27 witnesses, the San Francisco County Grand Jury returned an indictment against real parties Camille Johnson, Christopher Lindig, David Larsen, David Lieberman, Casey Watson, Joshua Lazcano, Colin Carlton, and Keeghan McHargue. All were charged with actively participating in a criminal street gang, a violation of section 186.22, subdivision (a). In various combinations or individually, real parties were further charged with 22 counts of felony vandalism (§§ 594, 594.7) and one count of conspiracy to commit a crime (§ 182, subd. (a)(1)). All but one of

---

[1] All further statutory references are to the Penal Code.

the felony vandalism counts included STEP Act enhancement or alternative penalty allegations. (See § 186.22, subds. (b) & (d).)

The evidence presented to the grand jury revealed a sophisticated conspiracy to paint graffiti on a large scale in San Francisco and Alameda Counties by a group identified as "KUK." Searches at real parties' residences uncovered evidence linking them to KUK including: Photographs showing defaced buildings and real parties posing next to graffiti; practice sketch pads filled with drawings of graffiti and "tags"; blueprints for graffiti completed in San Francisco; and graffiti paraphernalia, including tools and chemicals used to etch glass.

The number and variety of locations that had been defaced, as alleged in the indictment and described at the grand jury hearing, was staggering—a city power box, a large mural painted by school children, a historic Municipal Railway bus shelter, a truck, a van, a railroad support structure, a freeway support structure, a large mural commemorating union employees, three Municipal Railway vehicles, a police call box, and several buildings (both commercial and residential). Police officers testified that in a few instances they were able to detain suspects, including Lieberman, Lindig, and Larsen, at or near the scene, with spray paint, marker pens, and name tag stickers in their possession. There was also testimony regarding the cost to repair the damage, and the anguish caused by the destruction.

Real party Johnson moved to set aside or dismiss the indictment. (§ 995.) Johnson challenged the validity of the evidence introduced by the district attorney, and she argued the STEP Act was unconstitutional as applied to real parties.[2] Over the People's opposition, the trial court granted the motion "as it applies to any portion of the indictment that deals with implicating these defendants in a gang." The court agreed the words of the statute applied in a "narrow fashion" and appeared to support the gang allegations, but the court concluded the Legislature's intent was to apply the STEP Act only to "violent gangs." Further, according to the court, even if the Act were to apply, it was "way too vague" and it would violate "the substantive due process of these defendants."

We issued an alternative writ, commanding the trial court to set aside its order dismissing the charges and enhancements under the STEP Act. The trial court declined to set aside its order. Following the trial court's refusal to comply with the alternative writ, this court set the matter for argument and received two returns to the petition—one on behalf of all real parties, and one on behalf of Larsen, individually.

---

[2] Other real parties also moved to set aside the indictment on various grounds. Some of them purported to join Johnson's motion, but none presented any argument on the applicability or constitutionality of the STEP Act except for Johnson.

## DISCUSSION

### A. *Application of the STEP Act to Felony Vandalism*

The Legislature's stated intent in 1988 in enacting the STEP Act was to eradicate criminal activity by street gangs. (§ 186.21; Stats. 1988, ch. 1242, § 1, p. 4127.)[3] The Legislature sought to accomplish this goal through, among other methods, a combination of new substantive offenses, sentence enhancements, and alternative penalties. (See § 186.22.)

The STEP Act defines a " 'criminal street gang' " as "any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in [subd. (e) of § 186.22], having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity." (§ 186.22, subd. (f).)

A " 'pattern of criminal gang activity' " means "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the [enumerated] offenses, provided at least one of these offenses occurred after the effective

---

[3] Section 186.21 sets out the Legislature's findings and declarations: "The Legislature hereby finds and declares that it is the right of every person, regardless of race, color, creed, religion, national origin, gender, age, sexual orientation, or handicap, to be secure and protected from fear, intimidation, and physical harm caused by the activities of violent groups and individuals. It is not the intent of this chapter to interfere with the exercise of the constitutionally protected rights of freedom of expression and association. The Legislature hereby recognizes the constitutional right of every citizen to harbor and express beliefs on any lawful subject whatsoever, to lawfully associate with others who share similar beliefs, to petition lawfully constituted authority for a redress of perceived grievances, and to participate in the electoral process. [¶] The Legislature, however, further finds that the State of California is in a state of crisis which has been caused by violent street gangs whose members threaten, terrorize, and commit a multitude of crimes against the peaceful citizens of their neighborhoods. These activities, both individually and collectively, present a clear and present danger to public order and safety and are not constitutionally protected. The Legislature finds that there are nearly 600 criminal street gangs operating in California, and that the number of gang-related murders is increasing. The Legislature also finds that in Los Angeles County alone there were 328 gang-related murders in 1986, and that gang homicides in 1987 have increased 80 percent over 1986. It is the intent of the Legislature in enacting this chapter to seek the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs. The Legislature further finds that an effective means of punishing and deterring the criminal activities of street gangs is through forfeiture of the profits, proceeds, and instrumentalities acquired, accumulated, or used by street gangs."

date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons."[4] (§ 186.22, subd. (e).)

■ Felony vandalism (§ 594, subd. (b)(1)) is one of the enumerated criminal acts. (§ 186.22, subd. (e)(20).)

Little if any statutory construction is required to see that a group of more than three people, having a common name or symbol, having as its primary activities the commission of the crime of felony vandalism, and whose members have committed and conspired to commit the crime on many separate occasions, is a criminal street gang under the STEP Act. Real parties appear to concede the point, though they contend it is absurd to apply the STEP Act to persons "writing" graffiti ("notwithstanding the facial application of the words of the STEP Act to real parties' conduct, to prosecute real parties—whose only alleged criminality ever consists of writing graffiti—as a 'criminal street gang' works a manifest and absurd injustice").

To overcome the "facial application" of the STEP Act to their alleged conduct, real parties present two arguments. First, the Legislature never intended the STEP Act to apply to a group of people whose only crime is painting graffiti. For this proposition, real parties rely on the legislative findings and declarations, which refer to "violent" street gangs and "violent" groups and individuals. (§ 186.21.) Second, the application of the STEP Act to real parties would violate their substantive due process rights.

We agree with real parties that we should look to the STEP Act as a whole to determine the Legislature's intent. (See *Clean Air Constituency v. California State Air Resources Bd.* (1974) 11 Cal.3d 801, 814 [114 Cal.Rptr. 577, 523 P.2d 617] [courts should construe every statute with reference to the entire scheme of law].) We part company, however, in finding any conflict between the legislative findings and declarations (§ 186.21), and the substantive provisions of the Act (§ 186.22). The findings and declarations represent only a general statement of a problem identified by Legislature, and the goal the Legislature hoped to achieve. Although the Legislature was clearly most concerned with violent gang crime, particularly murder, it more broadly sought "the eradication of criminal activity by street gangs by focusing upon patterns of criminal gang activity and upon the organized nature of street gangs, which together, are the chief source of terror created by street gangs."

■ The substantive provisions of the STEP Act focus on an array of crimes, both violent and nonviolent, that could terrorize a community when

---

[4] The commission of two acts violating the same penal provision satisfies the requirement of " 'two or more' " offenses. (*People v. Loeun* (1997) 17 Cal.4th 1, 10, fn. 4 [69 Cal.Rptr.2d 776, 947 P.2d 1313] (*Loeun*).)

committed as part of a pattern by an organized group. The nonviolent crimes include, in addition to felony vandalism, grand theft, looting, money laundering, vehicle theft, and sale of a controlled substance. (§ 186.22, subd. (e)(4), (9), (10), (13), (14), (25).) The nonviolent crimes are listed right alongside the violent crimes, without any distinction, as predicate offenses for defining a criminal street gang. The suggestion by real parties that there must be a violent crime in addition to a nonviolent crime in order to invoke the provisions of the STEP Act finds no support in section 186.22. Notably, the STEP Act punishes persons who participate in "criminal street gangs" (§ 186.22, subds. (a), (e)), not just those who participate in *violent* criminal street gangs.

■ Thus sections 186.21 and 186.22 can be harmonized without rendering any part of either a nullity. But even if there were a conflict between the sections, the specific language of the latter would control over the general language of the former. (See *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478 [66 Cal.Rptr.2d 319, 940 P.2d 906] [specific statute prevails over general statute when the two sections cannot be reconciled].) We also assume the Legislature was aware of its reference to "violent" gangs in section 186.21 when it added felony vandalism and other nonviolent (and violent) crimes as predicate offenses in 1994 (Stats. 1994, ch. 47, § 1, pp. 388–390; Stats. 1994, ch. 451, § 1, pp. 2438–2440). (See *People v. Cruz* (1996) 13 Cal.4th 764, 775 [55 Cal.Rptr.2d 117, 919 P.2d 731] [the Legislature is presumed to be aware of existing law and judicial decisions interpreting the law].) The fact that the Legislature's primary concern when it enacted the STEP Act in 1988 was violent crime does not mean it could not later revisit the matter to address the detrimental effect of organized, nonviolent criminal activity on a community.[5] The 1994 amendments were not insignificant; they substantially expanded the list of predicate offenses. The Legislative Counsel's Digest for one of the amendments explains the "bill would change the definition of a crime by expanding the activities that bring a person within the scope of criminal gang activity . . . ." (Legis. Counsel's Dig., Sen. Bill No. 480 (1993–1994 Reg. Sess.) 5 Stats. 1994, Summary Dig. pp. 29–30.)[6]

---

[5] "[I]t is without question that San Francisco has a significant problem with graffiti vandalism. In the current fiscal year, the City will spend millions of dollars for graffiti abatement and removal. [Citation.] In addition, private property owners, public utilities and other entities spend millions more in eradication efforts. A brief walk through any neighborhood in San Francisco reveals that almost every available surface—from sign posts to utility boxes, curbstones to alleyways, building walls to storefront windows—has been defaced by graffiti." (*Sherwin-Williams Company v. City and County of San Francisco* (N.D.Cal. 1994) 857 F.Supp. 1355, 1369.)

[6] The People request that we take judicial notice of certain legislative materials related to the 1994 amendments of section 186.22. We grant the unopposed request.

■ We see little room for debate on the question of whether the Legislature intended the STEP Act to apply to a group "whose only alleged criminality" is engaging in the crime of felony vandalism.

### B. *Substantive Due Process*

Real parties contend section 186.22 violates their substantive due process rights because it reaches conduct that does not rationally relate to the Legislature's stated purpose of the STEP Act. Their constitutional argument sounds many of the same themes as their statutory argument: The Legislature was concerned about violent street gangs; the Legislature's intent was to eradicate violent gangs terrorizing innocent people; and the application of the STEP Act to persons whose only crime was writing graffiti is arbitrary. Real party Larsen separately argues that section 186.22 is vague and that the term "gang" is ambiguous.

■ "[The] Legislature does not violate due process so long as an enactment is procedurally fair and reasonably related to a proper legislative goal." (*Hale v. Morgan* (1978) 22 Cal.3d 388, 398 [149 Cal.Rptr. 375, 584 P.2d 512].) The enactment should not be unreasonable, arbitrary, or capricious. (*People v. Flores* (1986) 178 Cal.App.3d 74, 85 [223 Cal.Rptr. 465].) The wisdom of the legislation, however, is not at issue, and neither the availability of less drastic remedial alternatives nor the legislative failure to solve all related ills at once will invalidate a statute. (*Hale, supra,* 22 Cal.3d at p. 398.)

■ The California Supreme Court has rejected previous due process attacks on the STEP Act. (*Loeun, supra,* 17 Cal.4th at p. 11; *People v. Gardeley* (1996) 14 Cal.4th 605, 623–624 [59 Cal.Rptr.2d 356, 927 P.2d 713].) "[T]he STEP Act satisfies the requirements of due process by 'impos[ing] increased criminal penalties only when the criminal conduct is felonious and committed not only "for the benefit of, at the direction of, or in association with" a group that meets the specific statutory conditions of a "criminal street gang," but also with the "specific intent to promote, further, or assist in any criminal conduct by gang members." ([Former] § 186.22, subd. (b)(1).)' [Citation.] We do not understand the due process clause to impose requirements of knowledge or specific intent beyond these, and defendant cites nothing to convince us otherwise." (*Loeun, supra,* 17 Cal.4th at p. 11.)

■ Defacing real or personal property with graffiti is a crime. (§ 594, subd. (a)(1).) An individual acting alone faces the penalties set forth in section 594. The Legislature, however, could rationally and reasonably choose to impose stiffer penalties on persons who act in concert with others to deface property with graffiti. As the People point out, an organized group

whose members encourage and assist in the commission of felony vandalism can cause damage beyond that which an individual can achieve acting alone.

In providing for increased penalties for organized vandals, the Legislature attacks both the general problem of organized criminal activity and the specific problem of graffiti. (See *In re Danny H.* (2002) 104 Cal.App.4th 92, 104 [128 Cal.Rptr.2d 222] [legislative history of § 594.1 prohibiting sale of spray paint to minors was intended broadly to address increasing and widespread problems of blight, eyesores, and costly property damage caused by graffiti]; see also *Sherwin-Williams Company v. City and County of San Francisco, supra,* 857 F.Supp. at p. 1369 [legislation that seeks to prevent graffiti vandalism serves a legitimate public interest].) As the Ninth Circuit has noted, vandalism is not a victimless crime. (*United States v. Martinez* (9th Cir. 1995) 69 F.3d 999, 1000.) "Vandalism involves damage or destruction to the property of another which can be remedied only at a direct cost to the property owner. [¶] . . . [V]andalism involves planning, execution and a malicious intent on the part of the offender." (*Id.* at pp. 1000–1001.)

■ We see nothing unreasonable, arbitrary, or capricious in applying the STEP Act to the conduct at issue. In contrast, we reject as unreasonable real parties' suggestion that though the STEP Act does not apply to them, it might apply to a group of people carrying a common name or insignia whose purpose was to commit multiple acts of smashing the windows of cars or buildings.[7] (See § 594, subd. (b)(1).) Applying the STEP Act to persons who smash windows, but not to persons who deface buildings and vehicles causing damage of $400 or more, would be arbitrary. (§ 594, subd. (b)(1).)

■ Finally, though the word "gang" may be vague in the abstract (see *In re Jorge G.* (2004) 117 Cal.App.4th 931, 939 [12 Cal.Rptr.3d 193]), the "detailed requirements of the STEP Act are sufficiently explicit to inform those who are subject to it what constitutes a criminal street gang for purposes of the act." (*People v. Gardeley, supra,* 14 Cal.4th at p. 623; see also *Jorge G., supra,* 117 Cal.App.4th at pp. 939–940.)

---

[7] Real parties state: "The narrowly tailored ruling of respondent [superior] court demonstrated a reasoned analysis of the stated purpose of the statute and the particular facts of the case. Respondent court's holding would not apply, for example, to a group of people carrying a common name or insignia whose purpose was to commit multiple acts of smashing the windows of cars or buildings."

## DISPOSITION

Let a peremptory writ of mandate issue, directing the trial court to vacate its order of February 26, 2004, granting the section 995 motion and dismissing charges, enhancements, and alternate penalty provisions under the STEP Act. Instead respondent shall enter a new order denying the section 995 motion.

Having served their purposes, the alternative writ is discharged and the stay previously issued by this court is dissolved upon the finality of this opinion. This opinion shall become final in this court within 10 days of the filing of this opinion. (See Cal. Rules of Court, rule 24(b)(3).)

Kay, P. J., and Rivera, J., concurred.

The petition of real party in interest Camille Johnson for review by the Supreme Court was denied September 29, 2004. George, C. J., did not participate therein.