Filed 12/23/13  P. v. Smith CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038457 |
| Plaintiff and Respondent, | (Monterey County Super. Ct. No. SS101361) |
| v. | |
| JAMES WALTER SMITH, | |
| Defendant and Appellant. | |

Defendant James Smith entered a negotiated no-contest plea to a count of voluntary manslaughter (Pen. Code, § 192)[1] with an enhancement for personal use of a firearm (§ 12022.5, subd. (a)), and a count of attempted murder (§§ 187, subd. (a), 664). The trial court imposed the agreed-upon term of 18 years and four months, ordered defendant to register as a gang member under section 186.30, and ordered direct restitution to one of the victims' mothers in the amount of $5,703.37 to cover funeral expenses. Defendant appeals, arguing that the gang registration requirement violated the terms of his plea bargain and was unauthorized under law, and that he is entitled to a hearing on restitution.

For the reasons set forth below, we find that defendant forfeited his argument that the imposition of the gang member registration requirement violated the terms of his plea bargain. However, we conclude that insufficient evidence supported the trial court's order that he register as a gang member pursuant to section 186.30. We further find no

_____

[1] Further unspecified statutory references are to the Penal Code.

error with the trial court's order for restitution.  As set forth below, we modify the judgment to strike the gang registration requirement, and, as modified, affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts are not relevant to the issues raised on appeal.  We will therefore provide only a brief description of the circumstances of defendant's underlying offense.[2]  On September 15, 2009, Andre Lee Van got into an argument with Troy Hill after Hill teased Lee Van's younger brother.[3]  Lee Van left after warning Hill.  Later, Lee Van returned with defendant to shoot Hill, who was outside at the time.  One witness said he heard about 10 gunshots.  Hill died from gunshot wounds after being airlifted to a hospital.  A second victim, Scott Reynolds, was shot in the foot.  Reynolds was treated for his injuries at a hospital and released.

On May 21, 2010, the grand jury indicted defendant and Lee Van on six counts arising from the shooting.  Defendant entered into a negotiated disposition on May 1, 2012.  He agreed to plead no contest to voluntary manslaughter (§ 192) and admit the allegation that he personally used a weapon during the commission of the crime (§ 12022.5), with the understanding that he would serve no more than 18 years and four months in state prison.  Defendant signed and initialed a form titled "WAIVER OF RIGHTS PLEA OF GUILTY/NO CONTEST."  Defendant wrote in an "X" next to the statement that he understood he would be required to register with the local police agency or sheriff's department as a gang member.  Defendant placed his initials next to the statement that he understood he would have to pay a state restitution fine of not less than

---

[2] The facts of the underlying offense are taken from a probation officer's report, which is based on a report by the Seaside Police Department, since defendant pleaded no contest.

[3] Andre Lee Van's name is alternatively spelled "Andre Lee-Van" in certain parts of the record.

$200 and no more than $10,000, and that he understood he would be ordered to "pay restitution to those who suffered financially because of [his] conduct subject to a hearing and court order." Defendant also placed his initials next to a statement waiving his rights to appeal and next to a statement indicating he understood that the plea was not binding on the sentencing judge, but that if the sentencing judge withdrew his or her approval of the plea, defendant would be permitted to withdraw his plea.

During a hearing on May 1, 2012, the trial court accepted defendant's waiver of rights, finding that he made the waiver knowingly, intelligently, and voluntarily. The trial court then accepted defendant's plea and dismissed the remaining charges against defendant pursuant to section 1385. On June 8, 2012, the trial court sentenced defendant to the agreed-upon term of 18 years and four months in prison. The trial court ordered defendant to register as a gang member pursuant to section 186.30, over an objection by defendant's attorney.[4] The trial court further ordered defendant to pay direct victim restitution in the amount of $5,703.37. Defendant filed a notice of appeal.

Defendant filed an untimely request for a certificate of probable cause on August 23, 2012, which the trial court denied.

## DISCUSSION

On appeal, defendant contends that the gang registration requirement imposed by the trial court violated the terms of his plea bargain. Defendant also argues that the gang registration requirement is not supported by sufficient evidence in the record. Lastly, defendant argues that the victim restitution order must be set aside and remanded for a hearing. We address each of these contentions seriatim.

---

[4] According to defendant's probation report, defendant was a known gang member. The probation report further recommended that defendant register as a gang member pursuant to section 186.30.

3

1. **The Gang Registration Requirement**[5]

   A. *Waiver of the Right to Appeal*

Defendant makes the initial argument that the waiver of his right to appeal does not apply to his contentions regarding the trial court's imposition of the gang member registration requirement. The People do not proffer an argument to the contrary, simply stating that they "will not contend that [defendant's] waiver of appellate rights bars his appellate challenge to the gang registration imposed on him." The People note only that a waiver of a right to appeal does not apply to a "future error" that is " 'outside the defendant's contemplation and knowledge at the time the waiver is made.' " (*People v. Mumm* (2002) 98 Cal.App.4th 812, 815.)

We agree that defendant's waiver has not foreclosed his ability to appeal the gang registration requirement. A waiver of appeal may preclude a defendant from challenging an aspect of his sentence that is imposed pursuant to a negotiated plea. (*People v. Panizzon* (1996) 13 Cal.4th 68, 84.) However, such a waiver does not apply in circumstances such as the one presented here, wherein the gang registration requirement was ordered after defendant waived his right to appeal. Finding no waiver, we proceed to the merits of defendant's claim. First, we address defendant's argument that the imposition of the gang member registration requirement violated the terms of the plea bargain. For the reasons set forth below, we find that defendant forfeited this contention on appeal.

---

[5] Preliminarily, we note that defendant's argument regarding the imposition of the gang registration requirement does not attack the validity of defendant's plea. Therefore, his failure to obtain a certificate of probable cause does not bar review of this claim. (Cal. Rules of Court, rule 8.304(b)(4)(B).)

B. *Violation of Plea Bargain*

### a. Standard of Review

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles." (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) We therefore "apply the ordinary standards of review applicable in cases involving the interpretation of contracts generally." (*People v. Paredes* (2008) 160 Cal.App.4th 496, 507.) "Where the plea is accepted by the prosecuting attorney in open court and is approved by the court, the defendant, except as otherwise provided in this section, cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5.) Interpretation of a plea agreement will therefore turn to the question: "to what did the parties expressly or by reasonable implication agree?" (*In re Uriah R.* (1999) 70 Cal.App.4th 1152, 1157.)

### b. Forfeiture of Argument

We find that the issue of forfeiture is dispositive with respect to defendant's argument that the gang registration requirement violated the terms of his plea agreement. On May 1, 2012, defendant executed a form titled "WAIVER OF RIGHTS PLEA OF GUILTY/NO CONTEST." In this form, defendant was advised pursuant to section 1192.5, that he would be permitted to withdraw his plea if the court withdrew its approval of the plea after further consideration. The advisement stated: "I understand the terms of this plea agreement are not binding on the sentencing judge. However, if the Court withdraws approval of this plea agreement upon further consideration, the Court shall permit me to withdraw my plea, subject to the condition set out in item number 6, above."[6] Defendant placed his initials next to this statement. At the end of the form,

---

[6] Item No. 6 in the form detailed the sentencing consequences that may occur if defendant failed to appear for sentencing, absent good cause.

5

defendant signed and dated a statement that stated: "I have read, or have had read to me, this form and have initialed each of the items that applies to my case. I have discussed each item with my attorney. By putting my initials next to the items in this form, I am indicating that I understand and agree with what is stated in each item I have initialed. . . . I understand each of the rights outlined above and I give up each of them to enter my plea." Defendant's attorney also signed and dated the form, indicating that he had reviewed the form with defendant and had explained each of the items on the form.

A validly executed written form is a proper substitute for an oral advisement by the court. (*In re Ibarra* (1983) 34 Cal.3d 277, 285, overruled on other grounds in *People v. Howard* (1992) 1 Cal.4th 1132, 1177-1178; *People v. Panizzon*, *supra*, 13 Cal.4th at p. 83.) When a defendant is advised prior to entering his plea pursuant to section 1192.5 that he may withdraw his plea if the court withdraws its approval of the plea, and he does not object to the imposition of a sentence that exceeds or violates the plea bargain, he forfeits the issue on appeal. (*People v. Walker* (1991) 54 Cal.3d 1013, 1025, overruled on other grounds as stated in *People v. Villalobos* (2012) 54 Cal.4th 177.)

Here, defendant was advised in writing that he could withdraw his plea, as required by section 1192.5. Defendant placed his initials next to the statement, and indicated that he read and understood that the section containing the section 1192.5 advisement. During the sentencing hearing, defendant did not object to the imposition of the gang member registration requirement on the ground that it violated or exceeded the terms of the plea bargain. Defendant only made an objection to the gang member registration requirement because he was not a gang member. The trial court was not required to re-advise defendant of his right to withdraw his plea pursuant to section 1192.5 at the sentencing hearing, nor was the trial court required to specifically afford defendant the opportunity to withdraw his plea. (*People v. Murray* (1995) 32 Cal.App.4th 1539, 1546.)

6

Accordingly, having failed to object to the registration requirement on the ground that it violated or exceeded the terms of the plea bargain and having failed to seek to withdraw his plea, defendant has forfeited this argument on appeal.

C. *Lack of Sufficient Evidence of Gang-Relatedness*

Nevertheless, defendant did object below that the registration requirement was erroneous because he was not a gang member. Defendant therefore has not forfeited this claim on appeal, and we will address it on the merits.

a. **Standard of Review**

When an appellant contends that insufficient evidence supports a trial court's judgment or order, our review is circumscribed. (*In re Jorge G.* (2004) 117 Cal.App.4th 931, 941 (*Jorge G.*).) "On appeal we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence--that is, evidence that is reasonable, credible, and of solid value--from which a reasonable trier of fact" could make the required findings under the relevant standard of proof. (*People v. Stanley* (1995) 10 Cal.4th 764, 792; *Jorge G.*, *supra*, at pp. 941-942.)

b. **"Gang Related" Crime Under Section 186.30**

Section 186.30 provides that any person who is convicted of any of the three specified crimes in the statute shall register with law enforcement as a criminal street gang member. (§ 186.30; *People v. Martinez* (2004) 116 Cal.App.4th 753, 758-759 (*Martinez*).) The crimes specified in the statute are: (1) participation in a criminal street gang in violation of section 186.22, subdivision (a); (2) any crime in which a gang enhancement pursuant to section 186.22, subdivision (b) has been found to be true; or (3) any crime that the court finds is "gang related" at the time of sentencing. (§ 186.30, subd. (b)(1)-(3).) Here, it appears that the trial court imposed the gang registration requirement after implicitly finding that the crime was gang related at the time of sentencing. Defendant was not convicted or charged with participation in a criminal

street gang in violation of section 186.22, subdivision (a), and no enhancement pursuant to section 186.22, subdivision (b), was found to be true. Therefore, the trial court must have found that the crime was "gang related" at the time of sentencing in order to impose the gang registration requirement.

*Martinez* describes the requisite findings that must be made for a crime to be considered "gang related" for the purpose of section 186.30, subdivision (b)(3). The defendant in *Martinez* was a " 'certified Sureno gang member.' " (*Martinez*, *supra*, 116 Cal.App.4th at p. 757.) Martinez pleaded no contest to auto burglary. (*Ibid.*) At his sentencing hearing, the trial court ordered Martinez to register as a gang member pursuant to section 186.30, subdivision (b)(3). (*Martinez*, *supra*, at p. 758.) Martinez appealed, arguing that although he had a past history of gang involvement, his current crime for auto burglary was not "gang related." (*Ibid.*) The appellate court agreed with Martinez's argument, finding that registration was an "onerous burden" that could result in a misdemeanor due to noncompliance. (*Id.* at p. 760.) Therefore, the appellate court concluded that the registration requirement could not be imposed on defendants whose offenses did not specifically fall into one of the three specified categories under section 186.30. (*Martinez*, *supra*, at p. 760.)

Although Martinez had a prior history of gang involvement, the appellate court held that "a *crime* may not be found gang related within the meaning of section 186.30 based solely upon the defendant's criminal history and gang affiliations." (*Martinez*, *supra*, 116 Cal.App.4th at p. 761.) The *Martinez* court opined that in order for a gang registration requirement to be valid, the underlying crime must have some connection to gang activity. (*Id.* at p. 762.) "Gang," in the context of section 186.30, means a "criminal street gang" as defined in section 186.22, subdivisions (e) and (f). A crime would therefore be "gang related" if it is committed for the benefit of, at the direction of, or in association with, a criminal street gang. (*Martinez*, *supra*, at p. 762.) The *Martinez*

8

court stated that it did "not conclude that a defendant's personal affiliations and criminal record are without consequence in finding a 'gang related' crime within the meaning of section 186.30. To the contrary, a defendant's history of participation in gang activities or criminal offenses may prove that a crime not otherwise or intrinsically gang related nevertheless falls within the meaning of section 186.30. Thus, a crime committed by a defendant in association with other gang members or demonstrated to promote gang objectives may be gang related. However, the record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang." (*Ibid*.)

In Martinez's case, the appellate court determined that Martinez's auto burglary crime was not gang related as there was no evidence that connected the auto burglary with Martinez's gang activities. The probation report indicated that Martinez had committed the auto burglary with an accomplice, but the accomplice was not identified as a gang member. Furthermore, there was no evidence that the auto burglary was directed by, was associated with, or benefited Martinez's criminal street gang. (*Martinez*, *supra*, 116 Cal.App.4th at pp. 762-763.) The *Martinez* court therefore struck the gang registration requirement.

Additionally, in order for a crime to be "gang related" pursuant to section 186.30, it must be shown that the crime is somehow related to a criminal street gang. As specified by the appellate court in *Jorge C*., *supra*, 117 Cal.App.4th at page 944 "[a] crime is gang related if it is related to a criminal street gang as defined in section 186.22, subdivisions (e) and (f). The elements of this definition require: (1) an ongoing organization or group, (2) of three or more persons, (3) having as one of its primary activities the commission of the crimes enumerated in section 186.22, subdivision (e)(1)-(25), (4) having a common name or symbol, and (5) whose members individually or

9

collectively have engaged in a pattern of criminal gang activity. This pattern of gang activity must consist of: (a) two or more of the offenses enumerated in section 186.22, subdivision (e)(1)-(25), provided that at least one offense occurred after the effective date of the statute; (b) the last offense occurred within three years of the one before it; and (c) the offenses were committed on separate occasions or by two or more persons."

c. **Application to Defendant's Crime**

On appeal, defendant argues that that the trial court had no evidence on which it could have based its finding that his convicted offenses were "gang related" under section 186.30. Specifically, defendant points out that though the probation report alluded to the fact that defendant was associated with the "Seaside Crips," there was nothing that suggested the crime was somehow gang related. Defendant also argues that not a single element of the definition of a criminal street gang was provided in the probation officer's report or in the grand jury proceeding that could have established that the Seaside Crips was a criminal street gang. The People concede that the probation officer's report and the unsealed volume 2 of the grand jury transcript "do not contain substantial evidence to support a preponderance-of-the-evidence finding that the crimes here were gang related. Those documents contain nothing regarding specifics of the 'Seaside Crips,' the gang [defendant] was allegedly a member of." However, the People "submit the present substantial-evidence issue to this Court's review of the sealed [grand jury] transcript," as that transcript was reviewed by the trial court prior to sentencing.

Having reviewed the sealed grand jury transcript and the confidential clerk's transcript including the probation report and the second volume of the grand jury transcript, we find that there is no substantial evidence that indicates defendant's crime was gang related. Additionally, there is nothing in the sealed grand jury transcripts or other documents before the court that contains specifics about the "Seaside Crips," the gang that defendant was allegedly a part of. Therefore, there is nothing in the record to

10

support the conclusion that the Seaside Crips is a "criminal street gang" as defined under section 186.22, subdivisions (e) and (f). (*Jorge C.*, *supra*, 117 Cal.App.4th at p. 944.) The probation report includes only generalized information about gangs, with no specific reference or information about defendant's gang affiliation.

We therefore strike the order that defendant register as a gang member pursuant to section 186.30 due to insufficiency of the evidence.

### 2. **Victim Restitution**

Defendant contends that the trial court's order that he pay Mozel Hill, victim Troy Hill's mother, $5,703.37 for funeral expenses should be reversed and remanded for a hearing.[7] The People contend that defendant waived this argument on appeal in his plea agreement. We first address the issue of waiver.

A. *Waiver of Appeal Over Victim Restitution*

In his waiver and plea agreement form, defendant initialed a statement that read: "I understand that I will be ordered to pay a state restitution fine of not less than $200 nor more than $10,000 and may have a like amount suspended. I understand that I will be ordered to pay restitution to those who suffered financially because of my conduct *subject to a hearing and court order.*"

At the time defendant initialed this waiver, the amount and nature of any victim restitution was an open issue. Though defendant indicated that he understood he would be liable for restitution, he specifically agreed to the terms that any restitution order made would be subject to a hearing and a court order. Therefore, any future error with respect to victim restitution was not within defendant's "contemplation and knowledge" when

_____

[7] The trial court ordered restitution under section 1202.4, subdivision (f). Section 1202.4, subdivision (f), provides that a court "shall require" restitution to the victim or victims for economic loss resulting from the defendant's criminal conduct. Section 1202.4, subdivision (k) specifies that "victim" includes the immediate surviving family of the actual victim. (§ 1202.4, subd. (k)(1).)

11

the waiver was made. (*People v. Vargas* (1993) 13 Cal.App.4th 1653, 1662.) Defendant's waiver does not bar his right to appeal the victim restitution issue.

B. *Hearing on the Restitution Fine*

Defendant argues that the restitution fine should be set aside and the matter remanded for a hearing because the trial court failed to conduct a hearing on the restitution issue. We find this argument to be flawed, because it appears defendant was in fact afforded a hearing on the matter.

Pursuant to section 1202.4, subdivision (f), a trial court is required to order restitution to a victim who has suffered economic loss as a result of the defendant's crimes. The amount of restitution should be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) Defendants have a right to a hearing to dispute the amount of restitution. (*Id*., subd. (f)(1).) A defendant's right to notice and a hearing is satisfied if the amount of restitution claimed by the victim is stated in a probation report, and the defendant has the opportunity to challenge the figures in the probation report during the sentencing hearing. (*People v. Cain* (2000) 82 Cal.App.4th 81, 86; *People v. Resendez* (1993) 12 Cal.App.4th 98, 113.)

Here, the probation report specifically stated that Hill's mother was requesting restitution in the amount of $5,703.37 for the cost of funeral expenses. The probation report therefore recommended that restitution in the amount of $5,703.37 be made to Troy Hill's mother. Defendant and his attorney received the probation report before the sentencing hearing.[8] During the sentencing hearing, the trial court ordered defendant to pay restitution to Troy Hill's mother in the amount of $5,703.37. Defendant's attorney

---

[8] Defendant's attorney even requested a continuance on the sentencing hearing so he could go over the probation report with defendant and so he could look into some recently provided information that could be exculpatory.[8] The court granted the continuance, and set the sentencing hearing for the following week.

objected, and requested a separate hearing because he believed that "much, if not all, of [the funeral] was paid by community contributions." The court asked for clarification, and defendant's attorney argued that because the funeral expenses were paid for by community contributions, defendant may not be required to pay the full amount of restitution. The court responded by stating that "the collateral source rule" applies in criminal cases, and likened the situation to having an insurance company pay for the costs.

Afterwards, the court clarified that the restitution fine would be joint and several, and would be enforceable against both defendant and Lee Van. Defendant's attorney objected to the characterization of the restitution fine as joint and several. The following colloquy then took place between the court and defendant's attorney:

"[Attorney]: All right. So, I just lodge my objection as to the Court's reasoning on the collateral source in this case. [*Sic.*]

"[Court]: Well, this is your opportunity to explain why the Court is wrong.

"[Attorney]: Well, this was not out-of-pocket loss, Your Honor. And, I don't believe that asking him to pay $5,703.37--

"[Court]: For killing somebody?

"[Attorney]: --joint and liable [*sic*] is proper under the circumstances.

"[Court]: You think the community ought to bear the cost, not him? That's the order.

"[Attorney]: Well, I don't have any opinion on that. Thank you."

Defendant's attorney made no further objections, and did not request an additional hearing. In the beginning of the sentencing hearing, defendant did initially request a separate hearing on the restitution issue on the basis that he believed that some of the loss suffered by Troy Hill's mother was already paid for through charitable donations. The trial court considered this argument during the sentencing hearing and rejected it.

13

However, after the trial court concluded that the collateral source rule applied, defendant did not request an additional restitution hearing either to contest the amount of the restitution or to ascertain the identity of those who paid for the funeral expenses. Thus, we conclude that contrary to defendant's claims, he was afforded a hearing on the matter. To the extent that defendant requested an additional hearing on the restitution issue, he failed to renew his request after the trial court rejected his argument on the collateral source rule.

Since we find that the trial court did not deny defendant his right to a hearing on the restitution issue, we turn to the merits of defendant's claim that the trial court erred in its determination that the collateral source rule applies in criminal proceedings.

C. *"Windfall" from the Victim Restitution Order*

"[W]e review the trial court's restitution order for abuse of discretion." (*People v. Giordano* (2007) 42 Cal.4th 644, 663.) The trial court does not abuse its discretion "as long as the determination of economic loss is reasonable, producing a nonarbitrary result. Factors relevant to that determination will necessarily depend on the particular circumstances before the court." (*Id.* at p. 665.) Here, defendant does not dispute the amount of the restitution, only that the trial court incorrectly determined that the possibility that community donations paid for the funeral expenses was irrelevant to the amount of victim restitution to be awarded under section 1202.4, subdivision (f). We find that the trial court did not err in its determination, and therefore reject defendant's argument.

During the hearing, defendant raised the issue that he believed there was evidence that some of the funeral expenses might have been paid by charitable donations from the community. The trial court rejected defendant's argument that such donations would reduce the amount of restitution that could be ordered by the defendant. As defendant notes, the Legislature has determined that defendants are not to receive a "windfall" in

14

the form of a lowered restitution payment when a victim's insurance company has made payments.  (§ 1202.4, subd. (f)(2).)

Nonetheless, defendant argues that payments made by an insurance carrier are different from donations made by members of the community.  Defendant asserts that unlike charitable donations, insurance payments do not result in a windfall to the victim because the victim and his or her insurer are in a contractual relationship.  Defendant argues that this contractual relationship includes a requirement that the insured individual agrees to indemnify the insurer for any mitigation due to a recovery from the convicted offender.

Defendant relies on *People v. Birkett* (1999) 21 Cal.4th 226 (*Birkett*) in his effort to distinguish community contributions from insurance payments.  In *Birkett*, the Supreme Court considered whether a court could split a restitution award between the victims and the insurance companies who had partially reimbursed them.  The Supreme Court found that "the Legislature intended to require a probationary offender, for rehabilitative and deterrent purposes, to make *full* restitution for all losses *his crime had caused, and* that such reparation should go entirely to *the individual or entity the offender has directly wronged*, regardless of that victim's reimbursement from other sources . . . [t]hus, . . . the immediate victim was entitled to receive from the probationer the full amount of the loss caused by the crime, regardless of whether, in the exercise of prudence, the victim had purchased private insurance that covered some or all of the same losses. . . ."  (*Id.* at p. 246.)

Defendant specifically cites a footnote in *Birkett* discussing the possibility of indemnity or subrogation from the reimbursed victim.  The court in *Birkett* made an analogy to the collateral source doctrine in tort law in support of the notion that "[t]here is no great novelty" that a "person injured or damaged by the wrongful conduct of another may obtain full recovery from the wrongdoer even after partial or full

reimbursement from an independent source." (*Birkett*, *supra*, 21 Cal.4th at p. 247, fn. 19.)  The *Birkett* court then went on to explain that in the tort setting, the tortfeasor should not receive a windfall just because the victim "had the thrift and prescience to purchase insurance, and the investment represented by the victim's payment of insurance premiums would earn no benefit if they served to mitigate his tort damages." (*Ibid.*, citing to *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, 9-10.)  There, the victim would obtain "no double recovery to the extent his contractual arrangement with his insurer calls for subrogation or refund of insurance benefits in light of a recovery in tort." (*Birkett*, *supra*, at p. 247, fn. 19.)  "That a tort victim's insurer typically can assert such rights in the tort lawsuit itself [citation] does not mean the Legislature *must* so provide in the context of criminal restitution." (*Ibid.*)

Contrary to defendant's claims, we find that the rationale advanced in *Birkett* does not distinguish community donations from insurance payments.  Preliminarily, *Birkett* is not entirely on point for two reasons:  (1) *Birkett* involved a different restitution statute, former section 1203.04, whereas defendant here was ordered to pay restitution under section 1202.4, and (2) *Birkett* was primarily concerned with whether a private insurer could be awarded restitution for payments made to a victim.  However, the reasoning set forth in *Birkett* is applicable in some respects to the present case, as *Birkett* held that victims are entitled to full restitution for the amount of their loss, regardless of whether they were reimbursed by insurance policies. (*Birkett*, *supra*, 21 Cal.4th at pp. 228-229; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1271 [finding *Birkett* applicable in case involving former section 1203.04 where victim's medical bills were partially paid by Medi-Cal].)

As articulated by the court in *Birkett*, insurers typically have the right to a subrogation or indemnification action to recover amounts reclaimed in tort actions by a victim.  However, any such action would be limited to the provisions of the contract

16

between the insurer and the insured. Therefore, a tort victim will not obtain a double recovery *to the extent* that subrogation or indemnification rights, if any, are exercised by the insurer. *Birkett* does not stand for the proposition that a victim of a crime should receive full restitution only if they are contractually obliged to fully reimburse his or her insurance company for any benefits received.

Furthermore, it does not serve the purpose of the restitution statute to reduce a defendant's restitution obligation simply because the victim or the victim's direct family was fortuitous enough to receive donations from concerned members of the community. The purpose of the restitution statute, as elucidated by the court in *Birkett*, is to have the defendant make *full* restitution for losses incurred by his or her crime.

We therefore find no error with the trial court's rejection of defendant's argument on this point.

### DISPOSITION

The judgment is modified to strike the gang registration requirement pursuant to Penal Code section 186.30. As modified, the judgment is affirmed.

_____
Premo, J.

WE CONCUR:

_____
Rushing, P.J.

_____
Elia, J.

17